## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ROBINSON IMPROVEMENT COMPANY,
a Florida corporation

          Plaintiff,

                                      Case No. _____

v.

ST. JOHNS COUNTY, FLORIDA

          Defendant.

_____/

## COMPLAINT

Plaintiff, ROBINSON IMPROVEMENT COMPANY ("RIC"), by and through its undersigned counsel, hereby files this Complaint against the ST. JOHNS COUNTY (the "County") and states as follows:

## INTRODUCTION

1.    This case presents federal and state constitutional claims against the County for its actions related to real property owned by RIC (the "Property").

2.    This case presents claims against the County pursuant to Florida Statutes and Florida common law.

3.    This Complaint asserts seven (7) separate causes of action against the County for its actions in violating both federal and state law.

1

## THE PARTIES

4.      RIC is a Florida corporation.

5.      RIC is owner of approximately 2,673 acres of land located north of County Road 214, west of Interstate I-95 and south of County Road 208 (the "Property") located in St. Johns County, Florida.

6.      The County is a non-charter political subdivision of the State of Florida, with the capacity to sue and be sued, and maintains its principal place of business located at 500 San Sebastian View, St. Augustine, Florida.

7.      At all times relevant to this Complaint, the St. Johns County Board of County Commissioners (the "BOCC") was the final policymaker for the County for the purpose of adopting ordinances and resolutions regulating the use of real property located within the jurisdictional boundaries of the County.

8.      The County's the comprehensive plan (the "Plan") provides the official growth management policies of the County.

9.      The County's land development code (the "LDC") provides the criteria and processes for effectuating the Plan.

10.     At all times relevant to this Complaint, the County and its officers, agents and employees were acting under color of state law.

11.     RIC is suing the County for injunctive relief, declaratory relief and monetary damages pursuant to the United States Constitution, the Florida

Constitution, Florida Statutes and Florida law for the acts of the County and its officers, agents, and employees taken pursuant to the official policy, practice, or custom of the County.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this is a civil action arising under the Constitution and laws of the United States.

13.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1343(a)(3), as this is a civil action authorized by law to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

14.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1343(a)(4), as this is a civil action authorized by law to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

15.    This Court has jurisdiction over the claims brought herein pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, to declare the rights of RIC in

this action and to render both declaratory and injunctive relief for a violation of those rights by the County.

16.    This Court has jurisdiction over the claims brought herein pursuant to the Civil Rights Act, 42 U.S.C. § 1983, for the actions, laws and policies of the County which have deprived RIC of its lawful rights and privileges secured by the Constitution and laws of the United States.

17.    This Court has supplemental jurisdiction over the state law claims brought herein pursuant to 28 U.S.C. § 1367.

18.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2), as the County maintains its principal office in this judicial district, County officials perform their official duties in this judicial district, a substantial part of the events giving rise to the claims of RIC occurred in this judicial district, and the Property that is the subject of the action is situated in this judicial district.

## GENERAL ALLEGATIONS

### THE PROPERTY

19.    RIC is the fee-simple owner of the Property as more particularly shown below.

4



20.    The Property has been owned by RIC and/or family members which comprise the principles and members of RIC for over one hundred (100) years.

21.    The Property has been primarily used for timber harvesting for the past century.

22.    The Property is located immediately east of several wetland mitigation banks identified as the Star 4 mitigation bank, the Town Branch mitigation bank, the Sunnyside mitigation bank, the St. Johns mitigation bank and the Tupelo mitigation bank as shown below.



23.     The Property is currently subject to a timber lease which expires in 2026.

## CR 2209

24.     In the mid-1990s, the County was confronted with a serious problem. A significant segment of Interstate 95 in the County was over-capacity per its state mandated level of service, meaning more cars were on the road than the state mandated level of service could accommodate.

25.     Because of this failure, according to state law, any property within four (4) miles of the interstate could be denied a permit for construction and use even if the property met all local regulations.

26.    The solution was for the County to commit to constructing an alternative north-south corridor west of Interstate 95 which would alleviate traffic from the highway.

27.    That alternative road is known today as CR 2209.

28.    In exchange for committing to building CR 2209, the Florida Department of Transportation granted the County a variance from the state mandated transportation concurrency requirements.

29.    When finished, CR 2209 will run from State Road 9B in Duval County to Interstate 4 in Volusia County as shown below.



30.     South of CR 208 in St. Johns County, the original planned route for CR 2209 was for the road to go just west of the Property as show in paragraph 22.

31.     The problem with the original proposed alignment for CR 2209 is it would traverse and bifurcate several wetland mitigation banks.

32.     Impacting these wetland mitigation banks would have been prohibitively expensive and a regulatory impossibility, thereby making the County's acquisition of the land necessary for this alignment a non-starter.

33.     The County was in a bind, it needed to construct CR 2209 per its commitment to the state, but it could not obtain the land necessary for this needed segment.

34.     To solve the problem, the County met with representatives of RIC about possibly re-routing this segment of CR 2209 through the Property and a portion of the property then owned by RIC located south of CR 214 (the "Southern Property").

35.     Below is a graphic depicting the Southern Property in relation to the Property with the original alignment for CR 2209 and the current alignment.



36.    In total, the County requested that RIC agree to donate/cause to be donated to the County approximately 7.4 miles of right-of-way and related stormwater facilities (approximately 258 acres, in total, on both properties) of the Property and Southern Property.

37.    As compensation for taking this land, County agreed to initiate an amendment to its 2025 Comprehensive Plan (the "2025 Plan") to change the future

land use designation of the Property from Rural/Silviculture to Residential B *with a specific allotment of up to 3,332 residential units and a prohibition on any development prior to 2026* (the "Plan Amendment"). *See Exhibit A.*

38.    The County has secured the right-of-way for CR 2209 just north of the Property as shown below.



**The Plan Amendment**

39.    The Plan Amendment was initiated by the County's staff and was approved by the planning and zoning agency and then by the BOCC at transmittal and adoption, with final approval in January 2019.

40.    There was no opposition to the Plan Amendment.

41.    At the adoption hearing on the Plan Amendment, BOCC member Henry Dean stated the following,

> Well, let me borrow a phrase from one of my -- I think this is an offer we can't refuse. And I could spend 20 minutes talking about it, but I'll try to sort of be succinct in 35 seconds. This is basically allowing us to acquire the -- if not all, but the final major piece of right-of-way for a highway that's desperately needed, and we're able to acquire it without any cash coming from our somewhat limited budget, and we're getting development that will probably, in my opinion, head in this general direction in roughly five or six years anyway. And the agreement with the landowner, the underlying landowner is that no development could -- would commence until 2026. Did I see that figure right, Teresa, 2026? So I think it's -- I think this is something we -- we need to grab ahold of quick and run with it, and it's a desperately needed public works project. I'm going to just guess, and I'm no appraiser, but I'm guessing that this is probably somewhere between 6 and 8 million, if you had to put a dollar figure on the 224 acres, if we went to condemnation.

42.    At the adoption hearing for the Plan Amendment, the County's professional staff advocated for the Plan Amendment stating that the number of units and timing of development were consistent with the 2025 Plan and all applicable regulations in the LDC.

43.    The Plan Amendment was compatible with the area surrounding the Property.

44.     The Plan is the state-mandated document which sets forth the growth management plans, policies and objectives for future development in the County.

45.     When a specific number of units are designated for a specific property in the Plan, traffic impacts for those units are factored into the capacity analysis for existing roadways and the County's capital improvement plans.

46.     When a specific number of units are designated for a specific property in the Plan, that intensity and density of development is deemed compatible with the surrounding area.

47.     When a specific number of units are designated for a specific property in the Plan, that number of units is allocated to the County's plans for water and sewer capacity.

48.     When a specific number of units are designated for a specific property in the Plan, the St. Johns County School district factors the student generation from those units into its future capital improvement plans.

49.     When a specific number of units are designated for a specific property in the Plan, the County factors those units into its future growth projections and the need for services.

## ROW Donation Agreements

50.     Concurrent with the adoption of the Plan Amendment, the County and RIC entered into an agreement for donation of land on the Property needed for the

right-of-way and stormwater ponds needed for the CR 2209 segment (the "RIC Agreement"). *See Exhibit B*.

51.    The RIC Agreement requires RIC to donate approximately 123 acres of land for the right-of-way and stormwater pond sites needed for the CR 2209 segment within 180 days of receipt of a legal description and survey from the County.

52.    The RIC Agreement becomes "effective" upon the "approval and effectiveness" of the Plan Amendment.

53.    The RIC Agreement requires the County to request the conveyance of the land by **January 15, 2034**.

54.    The RIC Agreement states that the donation is not a "taking" but is an "Appropriation to Public Use."

55.    The just compensation for RIC's agreement to donate the land was the right to develop 3,332 homes on the Property as provided in Plan Amendment.

56.    Because RIC is required to donate land to the County, the RIC Agreement effectively prevents RIC from executing a new timber lease on the Property.

57.    Because RIC is required to donate land to the County, the RIC Agreement effectively prevents RIC from using the Property as a wetland mitigation bank.

58.    The requirement to donate approximately 123 acres of land to the County pursuant to the RIC Agreement, lowers the value of the Property.

59.    The Southern Property was purchased by West Saint Augustine Land and Timber, LLC ("West") on December 21, 2018, from RIC.

60.    The purchase and sale for the Southern Property was executed and negotiated while the County was processing the Plan Amendment and processing the RIC Agreement.

61.    Because the County needed land from the Southern Property for right-of-way and storm water sites as part of the CR 2209 segment, the sale from RIC to West included a requirement that West agree to donate said land on the Southern Property to the County at no cost.

62.    This donation requirement for the Southern Property lowered the sale price of the Southern Property to the detriment of RIC.

63.    Concurrent with the adoption of the Plan Amendment, the County and West entered into a donation agreement of land on the Southern Property for the right-of-way and stormwater ponds needed for the CR 2209 segment (the "West Agreement"). *See Exhibit C.*

64.    The West Agreement requires the County to request donation of the land on the Southern Property by **December 21, 2027**.

65.    Per the West Agreement, any extension beyond the date in Paragraph 64 must be agreed to by **West, the County and RIC**.

### Open Rural Zoning

66.    At the time of the Plan Amendment no rezoning was proposed for the Property because the 2025 Plan requires that any property over ten (10) acres in size is required to be rezoned planned unit development.

67.    A planned unit development rezoning requires a specific development plan, a phasing schedule and a master development plan.

68.    Because the Property is subject to a timber lease until (not coincidently), 2026, it was not possible for Petitioner and the County to approve a planned unit development zoning for the Property concurrently with the Plan Amendment.

69.    After the Plan Amendment was approved, the zoning for Property remained "Open Rural" ("OR") which was the same designation as before the Plan Amendment.

70.    As to residential development, OR allows for a minimum of one (1) acre lots on well and septic.

71.    Pursuant to the OR zoning, approximately 800 to 900 one-acre residential lots on well and septic could be developed on the Property.

72.    The Property has more value as timber land than a residential development under the OR zoning district.

15

73.    The Property has more value as wetland mitigation banks than residential development under the OR zoning district.

74.    The OR zoning on the Property prevents RIC from developing the Property with the same number of units as specifically and expressly authorized by the Plan Amendment.

## 2024 PUD

75.    In 2024, Petitioner filed an application to rezone the Property to planned unit development (the "PUD").

76.    The PUD set forth the specific development guidelines for the vested rights created by the Plan Amendment, specifically 3,332 homes.

77.    The PUD provided two 10-year phases of development in which each phase is tied to the completion of certain infrastructure improvements, in particular CR 2209 and the related storm water facilities.

78.    Each Phase of the PUD would allow for development of approximately half of the vested developments rights allocated to the Property by the Plan Amendment.

79.    Per the PUD, no certificates of occupancy could be issued on the Property until approximately half of the CR 2209 segment from CR 208 to a portion within the Property was completed.

80.    RIC agreed to acquire the missing portion of CR 2209 just north of the Property and/or form a community development district to take the necessary portion via eminent domain.

81.    Per the PUD, no certificates of occupancy for Phase 2 could be received until CR 2209 was completed to CR 214.

82.    As part of the PUD, Petitioner agreed to preserve 885 acres of wetlands.

83.    Per the PUD, RIC agreed not to receive any certificates of occupancy for any residences until 2028 and be limited to five hundred (500) units before 2030.

84.    The PUD constitutes a sufficiently meaningful application for this matter to be ripe.

85.    The BOCC's denial of the PUD represents a sufficiently definite and final decision by the County for purposes of ripeness.

## Proportionate Share Mitigation Agreement

86.    Pursuant to Florida law, development is required to mitigate for its impacts to transportation facilities. *See Section 163.3180, Florida Statutes.*

87.    Mitigation for these impacts can be made via donation of land, donation of money, construction of transportation facilities or a combination of all three.

88.    To study which transportation facilities are impacted by development, the County *normally* conducts a study area within a four-mile radius around the Property.

89.    For RIC and the Property, the County, in an *ad hoc* manner, expanded the study area beyond the normal four-mile radius.

90.    As a result of this expansion, the cost of mitigation for RIC's development plan grew to **$52.1 million**.

91.    Neither CR 208 nor CR 214, the two closet roads to the Property, would fail to meet the required level of service standards after the development of *all of* RIC's entitlements in the Plan Amendment.

92.    Normally, the value of donated land can be used as mitigation, however in this instance the County would not allow RIC to use the value of the land donated pursuant to the RIC Agreement or the West Agreement as mitigation.

93.    To mitigate its impacts, RIC proposed an agreement to the County to construct an approximately 4.1-mile-long segment of CR 2209 from CR 208 to CR 214 at a cost of approximately **$61.5 million** (the "Mitigation Agreement").

94.    Of the **$52.1 million** of alleged impacts, **$24.2 million** was to three of the CR 2209 segments that RIC was agreeing to construct.

95.    Normally, when a landowner provides mitigation via donation of land, the landowner is provided with credits towards their transportation impact fees.

96.    In this case, the County would not allow RIC to receive impact fee credits for the value of the land donated for CR 2209.

97.    The County's reasoning for not allowing credits for the land value was the theory that RIC *already* received compensation for the donation in the form of the entitlements in the Plan Amendment.

98.    In total, the per unit mitigation would be **$18,470.00** which would be a record in St. Johns County.

### BOCC Hearing on the PUD

99.    On November 5, 2024, the BOCC held a public hearing on the PUD.

100.    During the BOCC hearing, RIC presented expert testimony on transportation, drainage, water, sewer and planning.

101.    In opposition to the PUD were speakers who said that the PUD allowed too many homes, that the development was happening too fast and there would be too many impacts to roads.

102.    The BOCC unanimously denied the PUD.

103.    In denying the PUD, the BOCC members stated the PUD had too many homes and development would happen too soon.

104.    Specifically, in denying the PUD, the BOCC members cited the effect the number of homes and the timing would have on existing transportation facilities, specifically existing deficient transportation facilities.

105.    At the time the BOCC voted on the PUD there were no open comments from the County's professional planning staff.

106.    No BOCC member cited as a reason for denial the location of uses within the Property, the size of lots, the buffers, the recreation space or any other particulars, details or metrics that differentiate a planned unit development zoning from a comprehensive plan designation

107.    Per state law, a local government cannot hold an applicant for development responsible for existing deficiencies to transportation facilities. *Section 163.3180(h)(2), Florida Statutes.*

108.    Per the County's professional staff, existing deficiencies on transportation facilities may be used to deny an amendment to the Plan *but* cannot be used to deny an application for rezoning.

109.    The order denying the PUD was rendered on **November 7, 2024**. *Exhibit D.*

**Florida Land Use and Environmental Dispute Resolution Act, s. 70.51, Fla. Stat**

110.    On November 18, 2024, RIC filed with the County a request for initiation of the special magistrate processes set forth in the Florida Land Use and Environmental Dispute Resolution Act, s. 70.51, Fla. Stat. ("the Act").

111.    Initiation of the Act, by law, tolls the time to seek any judicial action on a denial of a development order, such as a rezoning.

112.    In March 2025, the County's staff met with RIC to mediate and craft revisions to the PUD to present to the BOCC.

113.    Through mediation, the County's staff and Petitioner produced a PUD which added additional buffers on the perimeter of the Property and neighborhood commercial uses.

114.    When presented to the BOCC, the commissioners opted not to hear the revised plan and instead instructed their staff to proceed with the special magistrate hearing pursuant to the Act.

115.    During this period, the County and RIC agreed to extend the statutory time period under the Act.

116.    The special magistrate hearing was held in July 2025.

117.    On August 19, 2025, the Honorable Judge Michael Traynor issued an order finding that the denial of the PUD by the BOCC was both **unfair and unreasonable** (the "Order"). *Exhibit E.*

118.    The Order made several recommendations for the PUD which RIC was willing to accept.

119.    The primary recommendation was that RIC build two-lanes of the CR 2209 segment from CR 208 to CR 214 before one home could be completed.

120.    RIC was agreeable to this recommendation.

121.    On September 16, 2025, the BOCC decided that it would not consider and evaluate the Order and the recommendations contained therein despite RIC's willingness to agree to extend the statutory time to do so.

122.    Per the Act, the tolling stops once the BOCC rejects the Order.

123.    Per the Act, absent the consent from the landowner, the local government has forty-five (45) days to accept or reject the recommendation.

124.    Per the Act, failure to affirmatively accept or reject the recommendation within the forty-five (45) day period constitutes a rejection.

125.    The County never affirmatively rejected the Order; therefore, the tolling period stopped on October 3, 2025.

## 2050 Plan

126.    Three (3) days prior to the special magistrate hearing the BOCC voted on their 2050 Comprehensive Plan (the "2050 Plan").

127.    As to the Property, the 2050 Plan allocated up to 3,332 homes with a condition that development could not begin until 2026. *See Exhibit F.*

128.    The 2050 Plan provides the stated policy for growth and development for the County.

129.    The stated policy of the County is that, as to the Property, the appropriate density and intensity of development is up to 3,332 homes.

130.    The stated policy of the County is that, as to the Property, the appropriate timing for development of the Property is commencement in 2026.

## Site Specific Comprehensive Plan Amendments

131.    The Plan Amendment is what is known as a site-specific comprehensive plan amendment.

132.    Most residential future land use designations in a comprehensive plan simply provide a maximum density of development allowed.

133.    For example, in the 2025 Plan, "Res-B" allows a density of two (2) units per net acre[1].

134.    In contrast, the Plan Amendment specifically designates the Property as "Res-B" but with an express provision that allows the Property to be developed with up to 3,332 homes on the condition that development not begin until 2026.

135.    Because the Property is zoned OR, RIC can only develop approximately a quarter of the entitlements expressly permitted by the Plan Amendment.

136.    Based on information and belief, there are thirty-eight (38) properties in the County which have site specific text comprehensive plan amendments which expressly provide for a specific number of units.

137.    Of those thirty-eight (38) properties, the BOCC approved thirty-six (36) rezonings to allow for the same number of units as set forth in the corresponding comprehensive plan amendment for the same property.

---

[1] This does not include certain density bonuses allowed in the 2025 Plan.

138.    The only two instances where the BOCC has denied a rezoning that matches the entitlements in a site-specific text amendment.

139.    One of those instances was the PUD. *See Exhibit G.*

### Approval of Projects With Existing Deficient Transportation Facilities

140.    The BOCC's stated basis for denial of the PUD was it had too many units and the development occurring too soon, which – in the BOCC's opinion, was problematic for existing transportation facilities which are currently deficient.

141.    Generally, being "deficient" as to transportation facilities means that the current volume of traffic exceeds the assigned level of service for a particular transportation facility.

142.    The BOCC has approved rezonings for large development projects where there were existing deficiencies for transportation facilities.

143.    In particular, the BOCC has approved the following large development projects where there were existing deficiencies on nearby transportation facilities: Ferber SR16 PUD, Greenbriar Helow PUD, the Landings PUD and the most recent addition to the Silverleaf PUD.

144.    The County's professional staff has told the BOCC that existing transportation facility deficiencies are a sufficient reason to deny comprehensive plan amendments but said deficiencies cannot be used as a basis to deny a rezoning.

**CLAIMS FOR RELIEF**

**COUNT I**

*PENN CENTRAL* **REGULATORY TAKINGS CLAIM & DAMAGES**
**Unconstitutional Denial of Reasonable Investment-Based Expectations**
**U.S. CONSTITUTION – AMENDMENTS V & XIV; 42 U.S.C. §1983**

145.    RIC incorporates by reference paragraphs 1 through 144 of this Complaint.

146.    RIC asserts this cause of action against the County pursuant to 42 U.S.C. §1983 for injunctive relief, declaratory relief and monetary damages resulting from the County's actions in depriving RIC of its constitutional rights under color of state law.

147.    RIC asserts this cause of action against the County for an unconstitutional regulatory taking of its property without payment of just compensation, as guaranteed by the Fifth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment to the United States Constitution.

148.    All conditions precedent required to bring this action have been made or have been otherwise waived.

149.    A regulatory taking claim for payment of just compensation, asserted pursuant to *Penn Central Transp. Co. v. New York County*, 458 U.S. 104 (1978), does not require a showing that the government's actions caused an elimination or total loss of value of real property.

150.    The County's denial of the PUD constitutes a taking of the Property without just compensation.

151.    The County's requirement that RIC donate land for the CR 2209 at no cost coupled with RIC not being able to utilize the entitlements in the Plan Amendment constitutes a taking without just compensation.

152.    The County's denying RIC's lawful right to use the entitlements set forth in the Plan Amendment does not serve a lawful, substantial or legitimate public purpose.

153.    The County's requirement that RIC donate land for CR 2209 at no cost and without being able to utilize the Plan Amendment entitlements does not serve a lawful, substantial or legitimate purpose.

154.    As to the RIC Agreement, the County is physically taking land from RIC.

155.    As to the West Agreement, the County is physically taking land from West.

156.    As to the denial of the PUD, the County's zoning policy as to the Property is that the Property cannot be developed with the same rights as specified in the Plan Amendment.

157.    The County's actions, as described herein, have denied RIC its lawful right to have an economic and beneficial use of the Property.

158.    The County's actions, as described herein, have caused RIC to substantially and disproportionately bear a public burden, without payment of just compensation to RIC.

159.    RIC had a reasonable investment-backed expectation that the Property – which the County had expressly designated in the 2025 Plan and the 2050 Plan as being appropriate for the development of up to 3,332 homes – could be developed with up to 3,332 homes.

160.    The development of the Property under OR is significantly and severely less valuable than the value of the Property without the RIC Agreement.

161.    RIC had a reasonable investment-backed expectation that the Property could begin development with the rights under the Plan Amendment in 2026.

162.    RIC had a reasonable investment-backed expectation that by entering into the RIC Agreement that RIC could exercise the rights set forth in the Plan Amendment beginning in 2026.

163.    The County's actions, as described herein, have frustrated the reasonable investment-based expectations of RIC in its lawful right to use and develop its Property.

164.    The County's actions, as described herein, have drastically diminished the economic value of the Property.

165.    The County's actions, as described herein, have prevented RIC from realizing a reasonable return on its investment in the Property.

166.    The County's actions, as described herein, have caused RIC to suffer significant monetary losses in the form of professional fees and costs that it incurred in furtherance of its lawful right to use its Property, as well as millions of dollars in lost revenue and diminution in value of the Property.

167.    The County has failed to pay just compensation to RIC for the unlawful taking of its Property.

168.    The County's actions, as described herein, have resulted in an unconstitutional taking of the Property of RIC without payment of just compensation.

169.    At all times material to this action, the County and its authorized agents and employees – including the elected members of the County Commission – were acting under color of law.

170.    The violation of RIC's rights under the United States Constitution constitutes irreparable harm.

171.    Without injunctive relief, RIC is unable to develop the Property in the manner as set forth in the Plan Amendment.

172.    The harm caused to RIC by the County's actions and inactions in refusing to recognize lawful development rights for the Property is far greater than any conceivable harm to the County that would result from the granting of injunctive relief.

173.    An injunction demanding that the County recognize the lawful development rights of a private-property owner will both serve and promote the public interest.

WHEREFORE, RIC respectfully requests that this Court:

a.  Declare that the County's actions, as described herein, constitute an unconstitutional taking of the private property of RIC without payment of just compensation;

b.  Enjoin the County and its authorized agents, employees and elected officials from any further actions to unlawfully take the private property of RIC without payment of just compensation;

c.  Empanel a jury to award actual, compensatory and consequential damages pursuant to 42 U.S.C. §1983, including but not limited to the value taken and costs associated with being unable to develop the Property pursuant to the Plan Amendment;

d.  Award fees and costs to RIC pursuant to 42 U.S.C §1988; and

e.  Grant such other relief as the Court deems just and proper.

## COUNT II

**TAKING WITHOUT JUST COMPENSATION CLAIM**

*Failure to provide just compensation*

**U.S. CONSTITUTION – AMENDMENTS V & XIV; 42 U.S.C. §1983**

174.    RIC incorporates by reference paragraphs 1 through 144 of this Complaint.

175.    RIC asserts this cause of action against the County pursuant to 42 U.S.C. §1983 for injunctive relief, declaratory relief and monetary damages resulting from the County's actions in depriving RIC of its constitutional rights under color of state law.

176.    RIC asserts this cause of action against the County for an unconstitutional taking of its property without payment of just compensation, as guaranteed by the Fifth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment to the United States Constitution.

177.    All conditions precedent required to bring this action have been made or have been otherwise waived.

178.    The requirement in the RIC Agreement that RIC convey over 123 acres of land at the County's request without compensation constitutes a taking of real property.

179.    In lieu of the County taking RIC's property via eminent domain proceedings, the County entered into the RIC Agreement

180.    The language in the RIC Agreement providing that the agreement is not a "taking" is valid only if the County *actually* allows RIC to use the just compensation set forth in the RIC Agreement.

181.    As just compensation for the donation land to the County at no cost to the taxpayers, the County agreed to provide RIC with entitlements to develop up to 3,332 homes with the condition that said development cannot begin until 2026.

182.    In agreeing that entitlements for up to 3,332 homes as the compensation to RIC, the County agreed that the value of said entitlements was "just" in compensating RIC for 1) the loss of land for the road and stormwater sites, 2) the severance damages to the remainder

183.    In denying the PUD, which is necessary for RIC to *actually use* the entitlements that serve as the just compensation for the land donation, the County has effectively taken property from RIC *without* having to provide RIC with just compensation.

184.    The requirement that RIC donate over 120 acres of the Property to the County has prevented RIC from entering into new timber leases on the Property.

185.    The requirement that RIC donate over 120 acres of the Property has prevented RIC from fully using the Property for wetland mitigation banks.

186.    The requirement that RIC donate over 120 acres of the Property has eliminated all economic value and beneficial use of the portion of the Property to be donated while the RIC Agreement is in place.

187. The County requiring RIC to force the donation of the portion of the Southern Property for the CR 2209 segment decreased the value of the Southern Property and the compensation RIC received in said conveyance.

188. The County's actions, as described herein, have eliminated all economic value and beneficial use of the portion of the Property slated to be donated while the RIC Agreement is in place.

189. The County's actions, as described herein, have caused severance damages to the remainder of the Property.

190. The County's actions, as described herein, have caused RIC to suffer significant monetary losses in the form of professional fees and costs that it incurred in furtherance of its lawful right to use its Property, as well as millions of dollars in lost business revenue and diminution in value of the Property.

191. The County's actions, as described herein, do not serve any legitimate or lawful public purpose.

192. At all times material to this action, the County and its authorized agents and employees – including the elected members of the County Commission – were acting under color of law.

193. The violation of RIC' rights under the United States Constitution constitutes irreparable harm.

194. Without injunctive relief, RIC is unable to receive the just compensation the County agreed was appropriate.

195. The harm caused to RIC by the County's actions and inactions in refusing to provide just compensation is far greater than any conceivable harm to the County that would result from the granting of injunctive relief.

196. An injunction demanding that the County provide just compensation will both serve and promote the public interest.

WHEREFORE, RIC respectfully requests that this Court:

    a. Declare that the County's actions, as described herein, constitute an unconstitutional taking of the private property of RIC without payment of just compensation;

    b. Enjoin the County and its authorized agents, employees and elected officials from any further actions to unlawfully take the private property of RIC without payment of just compensation;

    c. Empanel a jury to award actual, compensatory and consequential damages pursuant to 42 U.S.C. §1983, including but not limited to the value taken and costs associated with being unable to develop the Property; and

    d. Award fees and costs to RIC pursuant to 42 U.S.C §1988.

    e. Grant such other relief as the Court deems just and proper.

## COUNT III

### EQUAL PROTECTION CLAIM & DAMAGES

*Unconstitutional Denial of Equal Protection of Law*

U.S. CONSTITUTION – AMENDMENT XIV; 42 U.S.C. §1983

197.  RIC incorporates by reference paragraphs 1 through 144 of this Complaint.

198.  RIC asserts this cause of action against the County pursuant to 42 U.S.C. §1983 for injunctive relief and declaratory relief in connection with the County's actions in depriving RIC of its constitutional rights under color of state law.

199.  RIC asserts this cause of action against the County for an unconstitutional deprivation of equal protection of the law, as guaranteed by the Fifth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment to the United States Constitution.

200.  All conditions precedent required to bring this action have been made or have been otherwise waived.

201.  The County approved the Plan Amendment.

202.  The Plan Amendment is a site-specific amendment to the 2025 Plan which provides that the Property can be developed with up to 3,332 homes starting in 2026.

203.  The PUD effectuates the Plan Amendment by providing the zoning for those 3,332 homes.

34

204. After denying the PUD, the BOCC unanimously voted to approve the 2050 Plan, which specifically provides that the Property can be developed with up to 3,332 units and that development can start in 2026.

205. The BOCC denied the PUD because members deemed the PUD to have too many homes and the development was slated to happen too soon.

206. Pursuant to the PUD, development on the Property would not start until 2028 and was limited to five hundred (500) homes before 2030.

207. As to number of homes and the timing of development, the PUD is consistent with the Plan Amendment.

208. The County has previously approved zonings for thirty-six (36) properties which had site specific unit designations in the 2025 Plan.

209. In those instances, the zonings effectuated the entitlements as set forth in the site-specific designation in the 2025 Plan for the property subject to the zoning.

210. The thirty-six (36) properties are substantially similar to the Property.

211. The BOCC also stated that, in part, the denial of the PUD was due to the current deficiencies of transportation facilities.

212. RIC and the PUD did not cause these existing deficiencies.

213. RIC agreed to exceed its mitigation requirements for transportation by over **$9 million**.

35

214.   The BOCC has recently approved four (4) other large master planned developments where the County's traffic study showed that there were current deficiencies of transportation facilities.

215.   These four (4) other large master planned developments are substantially similar to the Property.

216.   RIC has a clearly established constitutional right not to have its Property treated differently by the County than other similarly situated properties.

217.   At all times material to this action, the County and its authorized agents and employees – including the elected members of the County Commission – were acting under color of law.

218.   The County's disparate treatment of RIC in connection with refusing to allow for zoning which effectuates the Plan Amendment is wholly arbitrary.

219.   The County's disparate treatment of RIC by denying the PUD based upon existing deficiencies on transportation facilities is wholly arbitrary.

220.   The County has no rational basis for treating RIC and its Property differently than other similarly situated properties in the County.

221.   The County has unduly discriminated against RIC and its Property by unduly prejudicing the private-property rights of RIC in failing to designate a zoning for the Property which allows for the full use of the rights granted by the Plan Amendment.

222.    County has violated the constitutional right of RIC to equal protection under the law by selectively applying existing transportation facility deficiencies as a basis for denial of the PUD.

223.    County has violated RIC's right to equal protection under the law by effectively requiring RIC to mitigate for existing transportation facility deficiencies.

224.    There is no rational basis for treating the Property of RIC differently than all other similarly situated properties within the County.

225.    RIC is unable to develop or make any beneficial or economic use of its Property pursuant to the entitlements in the Plan Amendment due to the County's violation of RIC' constitutional rights to equal protection of law.

226.    The County's actions, as described herein, are arbitrary, capricious, discriminatory and prejudicial to the constitutional rights of RIC, with no basis in law or fact.

227.    The County's actions and inactions constitute a continuing violation of the United States Constitution.

228.    Unless the County is ordered to provide the Property with lawful zoning entitlements equal to the entitlements in the Plan Amendment, RIC will continue to suffer irreparable harm and damages.

229.    The violation of the right of RIC to equal protection under the United States Constitution constitutes irreparable harm.

230.    Unless the County is ordered to provide the Property with zoning entitlements to the same degree as the those set forth in the Plan Amendment, RIC will continue to suffer irreparable harm and damages.

231.    At all times material to this action, the County and its authorized agents and employees – including the elected members of the County Commission – were acting under color of law.

232.    Without injunctive relief, RIC is unable to develop the Property with any lawful use.

233.    The harm caused to RIC by the County's actions in treating the Property of RIC differently than those of other private-property owners is far greater than any conceivable harm to the County that would result from the granting of injunctive relief.

234.    An injunction demanding that the County recognize the lawful development rights of a private-property owner will both serve and promote the public interest.

235.    Without injunctive relief, RIC is unable to develop the Property.

236.    Enjoining the County from treating the Property differently than all other property within the County will not harm the County as much as continuation of the denial will harm RIC.

237. An injunction demanding that the County recognize the lawful development rights of a private-property owner will both serve and promote the public interest.

WHEREFORE, RIC respectfully requests that this Court:

a. Declare that the County's actions, as described herein, violate the constitutional right of RIC to equal protection of law, as guaranteed by the Fourteenth Amendment to the United States Constitution;

b. Enjoin the County and its authorized agents, employees and elected officials from treating RIC differently than similarly situated private-property owners and permanently enjoin the County from applying different standards to the Property for receipt of lawful zoning entitlements;

c. Award actual, compensatory and consequential damages to RIC pursuant to 42 U.S.C. §1983, including damages for the value taken from its Property and its inability to develop the Property without a lawfully assigned conventional zoning district;

d. Award fees and costs to RIC pursuant to 42 U.S.C §1988; and

e. Grant such other relief as the Court deems just and proper.

## <u>COUNT IV</u>
## STATE LAW REGULATORY TAKINGS CLAIM & DAMAGES

*Unconstitutional Denial of Property Rights Guaranteed by Florida Constitution*
**FLORIDA CONSTITUTION, ART. X, §6**

238.   RIC incorporates by reference paragraphs 1 through 144 of this Complaint.

239.   RIC asserts this cause of action against the County for an unconstitutional regulatory taking of its property without payment of just compensation, as guaranteed by Article X, Section 6, of the Florida Constitution.

240.   All conditions precedent required to bring this action have been made or have been otherwise waived.

241.   Article X, Section 6, of the Florida Constitution prevents the County from taking the private property of RIC without paying just compensation.

242.   The County's denial of zoning for the Property that allows use of the entitlements provided under the Plan Amendment constitutes an unlawful taking of the private-property rights of RIC without payment of just compensation.

243.   Without zoning which allows RIC to use the entitlements in the Plan Amendment, the County has failed to provide just compensation for the requirement that RIC donate over 120 acres of land to the County for the CR 2209 segment.

244.   Without zoning which allows RIC to use the entitlements in the Plan Amendment, the County has failed to provide just compensation for the requirement

to force West to donate over 135 acres to the County for the CR 2209 segment on the Southern Property.

245.    Because RIC *cannot actually use* the full entitlements granted under the Plan Amendment, RIC is now required to provide its land to the County, at no cost to the County.

246.    The requirement to donate a portion of the Property to the County for the CR 2209 segment prevents RIC from entering into a new timber lease for the Property.

247.    The requirement to donate a portion of the Property to the County for the CR 2209 prevents RIC from using the Property as wetland mitigation banking.

248.    The requirement to donate a portion of the Property to the County damages the value of the remainder of the Property.

249.    The requirement that RIC force West to donate a portion of the Southern Property to the County at no cost lowered the sale price of the Southern Property to West.

250.    RIC holds an actionable property interest and has standing to assert claims against the County for taking the Property without payment of just compensation.

251.    The County's actions, as described herein, have caused RIC to substantially and disproportionately bear the burden of the public, without payment of just compensation to RIC.

252.    The County's actions, as described herein, have caused RIC to suffer significant monetary losses in the form of professional fees and costs that it incurred in furtherance of its lawful right to use its Property, as well as millions of dollars in lost business revenue and diminution in value of the Property.

253.    The County's actions, as described herein, have deprived RIC of all economically beneficial use of the portion of the Property subject to the RIC Agreement.

254.    The potential ability of RIC to sell the Property and any associated residual value of the Property does not negate the fact that the County's actions and inactions have deprived the Property of all economic value.

255.    The County's actions, as described herein, constitute a continuing violation of the Florida Constitution.

256.    The County's actions, as described herein, constitute an inverse condemnation of the Property under Florida law.

257.    The County's actions, as described herein, do not serve any legitimate or lawful public purpose.

258.    At all times material to this action, the County and its authorized agents and employees – including the elected members of the County Commission – were acting under color of law.

259.    The violation of RIC's rights under the Florida Constitution constitutes irreparable harm.

260.    Without injunctive relief, RIC is unable to develop the Property with any lawful use.

261.    The harm caused to RIC by the County's actions and inactions in refusing to recognize lawful development rights for the Property is far greater than any conceivable harm to the County that would result from the granting of injunctive relief.

262.    An injunction demanding that the County recognize the lawful development rights of a private-property owner will both serve and promote the public interest.

WHEREFORE, RIC respectfully requests that this Court:

a.    Declare that the County's actions, as described herein, constitute a taking of the private property of RIC without payment of just compensation;

b.    Enjoin the County and its authorized agents, employees and elected officials from any further actions to unlawfully take the private property of RIC without payment of just compensation;

c.   Empanel a jury to award actual, compensatory and consequential damages to RIC for the unconstitutional taking of its Property, including but not limited to the value taken and costs associated with being unable to develop the Property;

d.   Award reasonable fees and costs to RIC; and

e.   Grant such other relief as the Court deems just and proper.

## COUNT V

## STATE LAW SUBSTANTIVE DUE PROCESS CLAIM & DAMAGES
### *Unconstitutional Denial of Substantive Due Process Rights Under Florida Law*
### FLORIDA CONSTITUTION, ART. I, §9

263.   RIC incorporates by reference paragraphs 1 through 144 of this Complaint.

264.   All conditions precedent required prior to bringing this action have been made or have otherwise been waived.

265.   The substantive right of due process, as afforded by the Florida Constitution, protects against arbitrary governmental conduct which results in the deprivation of legitimate and lawful private-property interests.

266.   The entitlements provided to the Property and RIC through the Plan Amendment constitute substantive due process rights.

267.   RIC has a legitimate and lawful private- property interest in the Property.

268.    The actions of the County in denying zoning which allows RIC to use the full rights under the Plan Amendment violate the substantive due process rights of RIC under the Florida Constitution.

269.    The County has no rational basis for denying a zoning that is consistent with the Plan Amendment.

270.    The County has violated the substantive due process rights of RIC by requiring the taking of more than 120 acres of the Property for the CR 2209 segment and not approving a zoning which allows RIC to fully use the just compensation for said required taking, i.e. the full entitlements allowed under the Plan Amendment.

271.    The County has violated the substantive due process right of RIC not to be subject to arbitrary and capricious decisions.

272.    Denying the PUD because it has too many units when the County already designated in the Plan the same number of units is arbitrary and capricious.

273.    Denying the PUD because development is happening too soon when the County already designated a 2026 start date in the plan is arbitrary and capricious.

274.    Denying the PUD because of existing deficiencies on transportation facilities when state law and the County's staff provide that said reason in unlawful is arbitrary and capricious.

275.    The County has no rational basis for denying zoning for the Property that allows RIC the use of the just compensation provided in the RIC Agreement.

45

276.    The County has infringed upon the lawful property interests of RIC in an arbitrary, capricious and irrational manner.

277.    The County's motive in infringing upon RIC's property interest – appeasing area residents for political reasons - is wholly improper and conducted with a flagrant disregard of the private-property rights of RIC.

WHEREFORE, RIC respectfully requests that this Court:

a.    Declare that the County's actions, as described herein, constitute an unlawful violation of the substantive due process rights of RIC, as guaranteed by the Florida Constitution.;

b.    Enjoin the County and its authorized agents, employees and elected officials from any further actions to deny RIC its substantive due process rights, as guaranteed by the Florida Constitution

c.    Empanel a jury to award actual, compensatory and consequential damages to RIC for the unconstitutional violation of its substantive due process rights, including but not limited to the value taken and costs associated with being unable to develop the Property;

d.    Award reasonable fees and costs to RIC; and

e.    Grant such other relief as the Court deems just and proper.

## COUNT VI
## DECLARATORY JUDGMENT CLAIM

46

### §163.3215, FLORIDA STATUTES

278.   RIC incorporates by reference paragraphs 1 through 144 of this Complaint.

279.   This is an action for declaratory judgment and injunctive relief pursuant to §163.3215, Florida Statutes.

280.   After accounting for the tolling provisions pursuant to §70.51, Florida States, this cause of action is brought within thirty (30) days after the rendition of the order denying the PUD.

281.   A complaint pursuant to §163.3215, Florida Statutes, is the only method available to challenge a development order for inconsistency with a local comprehensive plan.

282.   "Development order" means any order granting, **denying**, or granting with conditions an application for a development permit.

283.   "Development permit" includes any building permit, zoning permit, subdivision approval, **rezoning**, certification, special exception, variance, or any other official action of local government having the effect of permitting the development of land.

284.   The denial of the PUD constitutes a "development order" per §163.3215, Florida Statutes.

47

285.    RIC is an "aggrieved or adversely affected party" pursuant to §163.3215, Florida Statutes.

286.    The denial of the PUD materially alters the use or density or intensity of use for the Property, rendering it not consistent with the comprehensive plan adopted under this part.

287.    The Plan Amendment allows for 3,332 homes on the Property starting in 2026.

288.    The PUD would have allowed RIC to use the Property to develop 3,332 homes.

289.    The stated reason for denial of the PUD was it was too many homes which would happen too soon.

290.    The BOCC members specifically provided that the number of homes and the timing of the development, both of which are specifically set out in the Plan Amendment, were the reason for the denial.

291.    By denying the PUD, the use, density and intensity as set forth in the Plan Amendment cannot be effectuated.

292.    Specifically, due to the denial of the PUD, RIC cannot develop up to 3,332 homes on the Property and will not be able to start any development beginning in 2026.

293.    The denial of the PUD leaves the Property zoned as OR.

294.    Under OR, the Property can be developed with approximately 800 to 900 one-acre lots on well and septic.

295.    Because the number of homes is a stated reason for denial any future zoning application which seeks the full entitlements specifically set forth in the Plan Amendment would be subject to *res judicata*.

296.    The denial of the PUD materially alters the relationship between the zoning of the Property and the Plan Amendment with respect to the number of units from inconsistent with the potential to be consistent to permanently inconsistent.

297.    The material limitation on the use of the Property caused by the denial of the PUD renders the current zoning designation as inconsistent with the Plan Amendment as RIC can only develop approximately a quarter of the homes the County has expressly and specifically delineated as appropriate for the Property.

298.    Because the reason for the denial was the number of homes, any future proposed rezonings which sought the number of homes as set forth in the Plan Amendment would -if the BOCC followed the law- have to be denied.

299.    As such the denial of the PUD limits the Property to less homes than allowed in the Plan Amendment and is therefore inconsistent with the Plan.

WHEREFORE, RIC respectfully requests that this Court:

    a. Enter judgment for RIC declaring that the denial of the PUD was inconsistent with the Plan;

    b.   Award reasonable fees and costs to RIC pursuant to §163.3215(8)(c),

Florida Statutes; and

    c.   Grant such other relief as the Court deems just and proper.

**COUNT VII**

**CLAIM FOR EQUITABLE ESTOPPEL**

300.   RIC incorporates by reference paragraphs 1 through 144 of this Complaint.

301.   The doctrine of equitable estoppel may be invoked against a government in the same as an individual.

302.   The County actions and statements were that RIC could develop the Property with 3,332 homes starting in 2026.

303.   Specifically, the Plan Amendment expressly states that the Property can be developed with up to 3,332 homes and development can begin in 2026.

304.   By specifying this number of homes and this timing of development the County is providing that this density, intensity and timing are consistent with the Plan and compatible with the area surrounding the Property.

305.   At the adoption of the Plan Amendment, the County's professional staff offered a report and made statements that the number of homes and the timing of the development were compatible and appropriate for this area of the County.

306.   At the adoption of the Plan Amendment, the BOCC members made statements that the number of homes and the timing of the development were compatible and appropriate for this area of the County.

307.   RIC relied on these statements.

308.   RIC relied on the express allowance of entitlements in the Plan Amendment.

309.   RIC relied on these statements to its detriment.

310.   RIC relied on the Plan Amendment to its detriment.

311.   Specifically, RIC did not enter into a new timber lease or create wetland mitigation banks on the Property due to the actions of the County with respect to Property and the entitlements set forth in the Plan Amendment.

312.   RIC has incurred substantial obligations due to the County's actions.

313.   Specifically, RIC has incurred the requirement to donate over 120 acres of land to the County at no cost.

314.   RIC has further foregone beneficial economic uses for the Property due to its obligations.

315.   It is highly unjust and inequitable for the County in its official planning document, i.e. the Plan, in statements at public meetings, and in staff reports to declare that the Property is appropriate for 3,332 homes and for development to start in 2026

and then deny the zoning which effectuates those entitlements on the basis that it is too many homes occurring too soon.

WHEREFORE, RIC respectfully requests that this Court:

    a.  Declare that the County's is equitably estopped from denying the PUD based on there being too many homes and the development schedule being too soon.

    b.  Award actual, compensatory and consequential damages to RIC, including damages to compensate RIC for the cost and damages incurred in relying on the County's actions and statements with respect to the entitlements granted to the Property; and

    c.  Grant such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

RIC respectfully requests that this Court:

1.    Find and determine that this is a case of actual controversies over which it has jurisdiction.

2.    Declare that the County has taken the Property of RIC without just compensation in violation of the Takings Clause of the Fifth Amendment to the U.S. Constitution, as applied to the states through the Fourteenth Amendment, 42 U.S.C. §1983, and Article 10, Section 6 of the Florida Constitution.

3.      Declare that the County's denial of a zoning which allows for rights as expressly provided in the Plan Amendment without just compensation constitutes a violation of the Takings Clause of the Fifth Amendment to the U.S. Constitution, as applied to the states through the Fourteenth Amendment, 42 U.S.C. §1983, and Article 10, Section 6 of the Florida Constitution.

4.      Declare that the County has engaged in disparate treatment against RIC, as compared to similarly situated private-property owners, in violation of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. §1983.

5.      Declare that the County has violated the state substantive due process rights of RIC in violation of Article 1, Section 9 of the Florida Constitution.

6.      Declare that the denial of the PUD renders the current zoning of the Property inconsistent with the Plan.

7.      Declare that the County must allow a zoning designation for the Property which provides for the use of the same entitlements as the Plan Amendment as a condition precedent to the County requesting donation of the land on the Property or the Southern Property for the CR 2209 segment as provided.

8.      In the alternative to (7), declare that the County provide compensation to RIC in an amount equal to the fair market value of the entitlements granted in the Plan Amendment.

9.    Award actual, compensatory damages and consequential damages to RIC due to the County's conduct, actions and inactions with respect to the efforts of RIC to secure lawful zoning entitlements for its Property and the costs incurred in the delay in exercising said entitlements.

10.    Award actual, compensatory damages and consequential damages incurred by RIC due to the County's conduct, actions and inactions with respect to the Property, including, but not limited to, the value lost due to the County's denying zoning on the Property and the value lost by the RIC Agreement preventing RIC from utilizing the Property to its highest and best use under the current zoning.

11.    Enjoin the County from denying the PUD or a zoning substantially similar PUD for any of the following reasons: i) that 3,332 homes on the Property is too numerous, ii) said quantity of homes is not compatible with the area, iii) existing deficiencies on transportation facilities iv) the proposed development is occurring too soon v) or any other reason directly or indirectly tied to the quantity of homes.

12.    Enjoin the County from engaging in disparate treatment with respect to RIC and its Property.

13.    Award reasonable attorney's fees and costs to RIC, pursuant to 42 USC § 1988(b) and any other applicable provisions under the laws of the United States.

54

14. Award reasonable attorneys' fees and costs to RIC pursuant to Section 73.092, Florida Statutes, the Florida Constitution, Section 163.3215, Florida Statutes, and any other applicable provisions under the laws of the State of Florida.

15. Grant such other and further relief to RIC that the Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

RIC demands a trial by jury of all issues and claims so triable.

Dated:  October 21, 2025

Respectfully submitted,

_S/ZACHARY MILLER, ESQ._

ZACHARY MILLER, ESQ.
Florida Bar No. 59331
3203 Old Barn Court
Ponte Vedra Beach, FL  32082
Telephone: (904) 651-8958
Email: zwmillerlaw@gmail.com

_Counsel for Plaintiff_