EXHIBIT A

ORDINANCE NO. 2019 - _17_

AN ORDINANCE OF THE COUNTY OF ST. JOHNS, STATE OF FLORIDA, AMENDING THE 2025 COMPREHENSIVE PLAN, ORDINANCE NO. 2010-38, AS AMENDED, TO CHANGE THE FUTURE LAND USE MAP DESIGNATION FROM RURAL/SILVICULTURE (R/S) TO RESIDENTIAL-B (RES-B) FOR APPROXIMATELY 2,673 ACRES OF LAND LOCATED APPROXIMATELY WEST OF I-95, SOUTH OF COUNTY ROAD 208 AND NORTH OF COUNTY ROAD 214; PROVIDING A TEXT AMENDMENT TO LIMIT THE DEVELOPMENT OF THIS PROPERTY UNTIL THE YEAR 2026; PROVIDING FOR FINDINGS OF FACT; FINDINGS OF CONSISTENCY; SEVERABILITY; AND AN EFFECTIVE DATE.

WHEREAS, Chapter 125 and 163, Florida Statutes provide for the Board of County Commissioners to prepare, implement and enforce Comprehensive Plans and Land Development regulations for the control of development within the County;

WHEREAS, Section 163.3184 and 163.3187 Florida Statutes provide the process for the adoption of Comprehensive Plan amendments; and,

NOW THEREFORE BE IT ORDAINED BY THE BOARD OF COUNTY COMMISSIONERS OF ST. JOHNS COUNTY, FLORIDA:

SECTION 1. The St. Johns County Comprehensive Plan is amended to change the Future Land Map designation from **Rural/Silviculture (R/S) to Residential-B (RES-B);** for approximately 2,673 acres of land described and shown on the attached **EXHIBITS A, B** and to amend the text of the comprehensive plan to limit the development of the land until the year 2026 as shown on the attached **EXHIBIT C.**

SECTION 2. The 2025 Comprehensive Plan amendment described in Section 1 is based upon the following Findings of Fact:

(a) The amendment was fully considered after public hearing pursuant to legal notice duly published as required by Law.

(b) The amendment is consistent with the Northeast Florida Strategic Regional Policy Plan.

(c) The amendment is consistent with the applicable sections of the St. Johns County Comprehensive Plan and the Land Development Code.

**SECTION 3.** The remaining portions of the St. Johns County Comprehensive Plan, Ordinance No. 2010-38, as amended and the 2025 Future Land Use Map, as amended, which are not in conflict with the provisions of this ordinance, shall remain in full force and effect.

**SECTION 4.** Should any section, subsection, sentence, clause, phrase or portion of this ordinance be held invalid or unconstitutional by any court of competent jurisdiction, such portions shall be deemed a separate, distinct and independent provision and shall not affect the validity of the remaining portions.

**SECTION 5.** These amendments to the St. Johns County Comprehensive Plan shall be effective 31 days after the state land planning agency notifies the local government that the plan amendment package is complete. If timely, challenged, within 30 days after adoption, the amendment does not become effective until the state land planning agency or Administration Commission enters a final order determining the adopted amendment to be in compliance.

**SECTION 6.** This ordinance shall be recorded in a book of land use regulation ordinances kept and maintained by the Clerk of Court in accordance with Section 125.68, Florida Statutes.

**PASSED AND ENACTED BY THE BOARD OF COUNTY COMMISSIONERS OF ST. JOHNS COUNTY, FLORIDA, THIS** _____15ᵗʰ_____ **DAY OF** _January_ 2019.

**BOARD OF COUNTY COMMISSIONERS OF
ST. JOHNS COUNTY, FLORIDA**

BY: _Paul M. Waldron_
  **Paul M. Waldron, Chair**

RENDITION DATE **JAN 17 2019**

ATTEST: Hunter S. Conrad, Clerk

BY: _Dianne King_
  Deputy Clerk

Effective Date: **FEB 28 2019**



EXHIBIT A
2025 Future Land Use
From RURAL SILVICULTURE
To RESIDENTIAL - B

**Exhibit B**
**Legal Description**

Robinson Improvement Company Legal Description

For

Comprehensive Plan Amendment

All of Section 13, Township 7 South, Range 28 East, except that part in Official Records Book 193 Page 283 of the Public Records of St. Johns County, Florida;

And

East ½ of Section 23, Township 7 South, Range 28 East;

And

All of Section 24, Township 7 South, Range 28 East;

And

All of Section 25, Township 7 South, Range 28 East, lying north of CR 214 as recorded in Deed Book 246 Page 185 of the Public Records of St. Johns County;

And

East ½ of Section 26 and South ½ of Southwest ¼ of Section 26, Township 7 South, Range 28 East;

And

All of Section 35, Township 7 South, Range 28 East, lying north of CR 214 as recorded in Deed Book 246 Page 185 of the Public Records of St. Johns County;

And

All of Section 36, Township 7 South, Range 28 East, lying north of CR 214 as recorded in Deed Book 246 Page 185 of the Public Records of St. Johns County

## Exhibit C

**Robinson**

**Comprehensive Plan Text Amendment**

Objective A.1.11.1(TBD) - Development within the 1,666 acres of the Robinson Property, as defined in Ordinance 2019 - 1 , shall be limited to a maximum of 3,332 dwelling units. No development will occur on the subject property prior to 2026. Proposed changes to increase the residential density or add non-residential uses are subject to the provisions of chapter 163, Florida Statutes, as related to Comprehensive Plan Amendments.

THE ST. AUGUSTINE RECORD
Affidavit of Publication

**SJC GROWTH MANAGEMENT**
**4040 LEWIS SPEEDWAY**

**SAINT AUGUSTINE, FL 32084**

ACCT: 15628
AD# 0003125090-01
PO#

PUBLISHED EVERY MORNING SUNDAY THROUGH SATURDAY
ST. AUGUSTINE AND ST. JOHNS COUNTY, FLORIDA

STATE OF FLORIDA
COUNTY OF ST. JOHNS

Before the undersigned authority personally appeared MELISSA RHINEHART who on oath says he/she is an Employee of the St. Augustine Record, a daily newspaper published at St. Augustine in St. Johns County, Florida; that the attached copy of advertisement being a **SA Legal Retail** in the matter of **COMPAMD-2017000001, ROBINSON** was published in said newspaper on 12/19/2018.

Affiant further says that the St. Augustine Record is a newspaper published at St. Augustine, in St. Johns County, Florida, and that the said newspaper heretofore has been continuously published in said St. Johns County, Florida each day and has been entered as second class mail matter at the post office in the City of St. Augustine, in said St. Johns County, Florida for a period of one year preceding the first publication of the attached copy of advertisement; and affiant further says the he/she has neither paid nor promised any person, firm or corporation any discount, rebate, commission, or refund for the purpose of securing this advertisement for publication in said newspaper.

Sworn to and subscribed before me this _____ day of _____
by _____ who is personally known to me or who has produced as identification

_____
(Signature of Notary Public)



Notary Public State of Florida
Jennifer L. Burns
My Commission GG 196188
Expires 03/14/2022

# NOTICE OF PUBLIC HEARING TO CONSIDER ADOPTION OF A PROPOSED COMPREHENSIVE PLAN AMENDMENT TO THE FUTURE LAND USE MAP OF THE ST. JOHNS COUNTY 2025 COMPREHENSIVE PLAN

**NOTICE IS HEREBY GIVEN** that the St. Johns County Board of County Commissioners on **Tuesday, 1/15/2019 at 9:00 a.m.**, will hold a public hearing, as follows: The Board of County Commissioners will consider whether or not to adopt a comprehensive plan amendment to the St. Johns County Future Land Use Map of the 2025 Comprehensive Plan, with the following styled ordinance:

AN ORDINANCE OF THE COUNTY OF ST. JOHNS, STATE OF FLORIDA, AMENDING THE 2025 COMPREHENSIVE PLAN, ORDINANCE NO. 2010-38, AS AMENDED, TO CHANGE THE FUTURE LAND USE MAP DESIGNATION FROM RURAL/SILVICULTURE (R/S) TO RESIDENTIAL-B (RES-B) FOR APPROXIMATELY 2,673 ACRES OF LAND LOCATED APPROXIMATELY WEST OF I-95, SOUTH OF COUNTY ROAD 208 AND NORTH OF COUNTY ROAD 214; PROVIDING A TEXT AMENDMENT TO LIMIT THE DEVELOPMENT OF THIS PROPERTY UNTIL THE YEAR 2026; PROVIDING FOR FINDINGS OF FACT; FINDINGS OF CONSISTENCY; SEVERABILITY; AND AN EFFECTIVE DATE.

Said hearings will be held in the County Auditorium, County Administration Building, 500 San Sebastian View, St. Augustine, Florida. All interested parties may appear at the public hearings to be heard regarding any or all of the proposed amendment. Board of County Commissioner items not heard by 6 pm shall automatically be continued until 9 am the following day, unless otherwise directed by the Board.

The subject property includes 2,673 acres and is located on west of Interstate 95, south of County Road 208, and north of County Road 214, St. Augustine, FL 32092, within St. Johns County, Florida. See attached map generally depicting the location (Exhibit A). *A complete description is available in the St. Johns County Planning and Zoning Office.*

The proposed change is known as File Number COMPAMD-2017000001, and is available for review in the Planning and Zoning Division of the Growth Management Department, at the Permit Center, 4040 Lewis Speedway, St. Augustine, Florida and may be examined by interested parties prior to said public hearings.

Interested parties may appear at the public hearings to be heard regarding the proposed amendment.

If a person decides to appeal any decision made with respect to any matter considered at the meetings or hearings, he/she will need a record of the proceedings and for such purpose may need to ensure that verbatim records of the proceedings are made, which records include the testimony and evidence upon which appeal is to be based.



NOTICE TO PERSONS NEEDING SPECIAL ACCOMMODATIONS AND TO ALL HEARING IMPAIRED PERSONS: In accordance with the Americans with Disabilities Act, persons needing special accommodations or an interpreter to participate in this proceeding should contact the County's ADA Coordinator at (904) 209-0650 or at the County Administration Building, 500 Sebastian View, St. Augustine, Florida, 32084. Hearing impaired persons, call Florida Relay Service (1 800 955 8770) no later than 5 days prior to the meeting.

BOARD OF COUNTY COMMISSIONERS
ST. JOHNS COUNTY, FLORIDA
PAUL M. WALDRON, CHAIR
File Number: COMPAMD-2017000001, Robinson

0003125090 December 19th, 2018



# FLORIDA DEPARTMENT of STATE

**RON DESANTIS**
Governor

**MICHAEL ERTEL**
Secretary of State

January 22, 2019

Honorable Hunter S. Conrad
Clerk of Court
St. Johns County
500 San Sebastian View
St. Augustine, Florida 32084

Attention: Ms. Yvonne King

Dear Mr. Conrad:

Pursuant to the provisions of Section 125.66, Florida Statutes, this will acknowledge receipt of your electronic copy of St. Johns Ordinance No. 2019-7, which was filed in this office on January 22, 2019.

Sincerely,

Ernest L. Reddick
Program Administrator

ELR/lb

FILED **JAN 22 2019**
ST. JOHNS COUNTY
CLERK OF COURT
BY: _____
DEPUTY CLERK

EXHIBIT B

Public Records of St. Johns County, FL
Clerk number: 2019005154
BK: 4671 PG: 52
1/24/2019 9:57 AM
Recording $146.00

Prepared by:
Paolo S. Soria, Esq.
St. Johns County
Office of the County Attorney
500 San Sebastian View
St. Augustine, FL 32246

*Reo 2019-30*

# AGREEMENT FOR DONATION OF
# RIGHT-OF-WAY AND STORMWATER SITES

**THIS AGREEMENT FOR DONATION OF RIGHT-OF-WAY AND STORMWATER SITES** ("Agreement"), made this _17th_ day of January, 2019, by and between **ROBINSON IMPROVEMENT COMPANY**, a Florida Corporation (hereinafter referred to as the "Owner") whose address is 4417 Beach Boulevard, Suite 200, Jacksonville, FL 32207, and **ST. JOHNS COUNTY, FLORIDA**, a political subdivision of the State of Florida, (hereinafter referred to as the "County"), whose address is 500 San Sebastian View, St. Augustine, Florida 32084.

## RECITALS:

**WHEREAS**, the purpose of this Agreement is to memorialize the Agreement of Owner to donate (and, as provided for below, to require West Saint Augustine Land and Timber LLC ("West") to donate) to County a minimum 250 foot wide right-of-way corridor of approximately 7.4 miles, along with corresponding and necessary adjacent Stormwater Sites, for a proposed County Road 2209 from County Road 208 to County Road 305 in Central St. Johns County; and

**WHEREAS**, the Owner owns a portion of that certain property located in St. Johns County being more particularly described and depicted on attached Exhibit "A", incorporated by reference and made a part hereof and West own the remainder of said property, (said proposed right of way area described and depicted on Exhibit "A" being hereinafter collectively referred to as the "Right-of-Way Alignment"); and

**WHEREAS**, County Road 2209 is proposed to be a new north/south roadway (ultimately a six lane facility) providing necessary mobility and connections, connecting Race Track Road to County Road 204. A portion of this corridor has been constructed from Race Track Road to County Road 210 which has a connection to State Road 9B. Subsequent portions of County Road 2209 south of County Road 210 will have an interchange connection to the First Coast Expressway. In addition, County Road 2209 will also provide a reliever to the already congested I-95 as a parallel corridor; and

1

**WHEREAS**, Owner has offered to donate that portion of the Right-of-Way Alignment, along with the corresponding and necessary adjacent Stormwater Sites which is owned by Owner, to the County free of charge without expectation of consideration or credits, and free and clear of all encumbrances, except (i) that certain lease Agreement between Owner and Hudson Pulp and Paper dated February 19, 1971, as last assigned to Weyerhaeuser Corporation, which lease expires in February 19, 2026 ("hereinafter "Lease"), attached to this Agreement as Exhibit "B", and (ii) such other matters as encumber the Right-of-Way Alignment as of the date hereof, which encumbrances do not include any monetary liens; and

**WHEREAS**, Owner has also agreed to direct West to donate that portion of the Right-of-Way Alignment along with the corresponding and necessary adjacent Stormwater Sites which are owned by West to the County free of charge without expectation of consideration or credits, and free and clear of all encumbrances other than the Lease pursuant to Owner's right to so direct such dedication as provided for under Section 8 of that certain unrecorded agreement dated as of July 25, 2018 (the "West Donation Agreement"), as evidenced by that certain Memorandum of Agreement to Dedicate Road recorded as Instrument #2018091258, at Book 4658, Page 477 St. Johns County, Florida records; and

**WHEREAS**, the parties acknowledge that the Lease will expire on said February 19, 2026 and will not be renewed by Owner; and

**WHEREAS,** The Parties acknowledge that the conveyance of the Right-of-Way Alignment as generally shown and depicted on Exhibit "A" and the conveyance of the corresponding and necessary Stormwater Sites reasonably constitutes a donation for public use and allows the County to construct County Road 2209; and

**WHEREAS**, final alignment of the Right-of-Way Alignment and associated Stormwater Sites may need to be modified by mutual agreement of Parties to avoid to the greatest extent possible wetland impacts and avoid an inadequate Right-of-Way Alignment for the purposes of construction of County Road 2209; and

**WHEREAS**, this Agreement is contingent upon the approval and effectiveness of a Comprehensive Plan Amendment, File No. COMPAMD 2017-01 Robinson; and

**WHEREAS**, it is in the public interest for the County to accept the donation of the Property.

**NOW, THEREFORE**, in consideration of the covenants and agreements herein contained, Owner and the County agree as follows:

1. Recitals. The Recitals above are true and correct and are incorporated into this Agreement.

2. Legally Binding Commitment; Waiver of Impact Fee Credits. This Agreement constitutes a legally binding commitment by Owner to (i) provide and donate that portion of the Right-of-Way Alignment and Stormwater Sites owned by Owner free of

SGR/19616000.5

charge with no liens or encumbrances, except (a) the Lease, as defined above, and (b) such other matters as encumber the Right-of-way Alignment as of the date hereof, which encumbrances do not include any monetary liens, and without expectation of consideration, impact fee credits, or payment for transportation mitigation improvements, and (ii) direct West to donate that portion of the Right-of-Way Alignment and Storm Water Sites owned by West free of charge with no liens or encumbrances except the Lease and such other matters of title as encumbered such property at the time of West's acquisition thereof, and without expectation of consideration, impact fee credits or payment for transportation mitigation improvements. Owner waives any impact fee credits or any other credit towards transportation mitigation associated with the conveyance of the Right-of-Way Alignment and Stormwater sites.

3.      Appropriation to Public Use. This Agreement constitutes a donation for public use and does not constitute a taking for public use under the right of eminent domain.

4.      Right-of-Way Alignment. The Parties acknowledge that the Property depicted on Exhibit "A" depicts the 250 foot wide Right-of-Way corridor for County Road 2209 and is subject to reasonable reconfiguration or relocation per Section 5 contained herein.

5.      Drainage and Detention. The Parties acknowledge that the Property depicted on Exhibit "A" depicts the 250 foot wide Right-of-Way corridor for County Road 2209 and does not depict Stormwater Sites necessary to allow drainage, retention and outfall. Owner shall also convey to the County additional commercially reasonable Stormwater Sites on the property owned by Owner for drainage allowing outfall from    the Right-of-Way in locations to be determined and agreed upon by the Parties. The Stormwater Sites shall be designated by the County to be appropriate for retention of a six (6) lane facility from County Road 208 to County Road 305 and shall be adjacent to the Right-of-Way Alignment.

6.      Reasonable Right of Reconfiguration or Relocation. The Parties acknowledge that the proposed Right-of-Way Alignment depicted on Exhibit "A" is for planning purposes and may not reflect the final corridor conveyed to the County. If the Right-of-Way Alignment renders the Right-of-Way Alignment inadequate in the sole, reasonable discretion of the County, whether due to impaired access or impact to the Right-of-Way, or to the utility or functionality of the Right-of-Way, the parties shall cooperate in all reasonable respects to reconfigure or relocate the Right-of-Way corridor. County shall notify Owner of the County's decision that the Right-of-Way corridor is inadequate as soon as practicable, to maximize the opportunity to reconfigure or move. Time is of the essence in this subparagraph, to minimize the Parties' inconvenience as a result of changes to configurations or locations.

7.      Obligation for Legal, Survey, and Engineering costs. Owner shall not be responsible for any legal, survey, or engineering work associated with donation of the Right-of-Way Alignment or the Stormwater Sites.

8.      Timing of Conveyances Owner shall convey the subject lands as follows:

3

a.     Right-of-Way Alignment. Upon written request of the County and following the receipt of a legal description and survey prepared by County or its agents or contractors, (i) that portion of the Right-of-Way Alignment depicted on Exhibit "A" owned by Owner, as may be reconfigured or relocated pursuant to the terms hereof, shall be conveyed to St. Johns County within one hundred eighty (180) days of Owner's receipt of such written request, and (ii) Owner shall direct West to convey to St. John's County within one hundred eighty (180) days of Owner's receipt of written request such portion of the Right-of-Way Alignment depicted on Exhibit "A" as is owned by West, as may be reconfigured or relocated pursuant to the terms hereof.

b.     Stormwater Sites. Upon written request of the County and following the receipt of a legal description and survey prepared by County or its agents or contractors, (i) that portion of the Stormwater Sites as are owned by Owner sufficient to allow outfall from the Right-of-Way Alignment shall be conveyed to St. Johns County within one hundred eighty (180) days of Owner's receipt of such written request, and (ii) Owner shall direct West to convey to St. John's County within one hundred eighty (180) days of Owner's receipt of written request such portion of the Stormwater Sites as are owned by West sufficient to allow outfall from the Right-of-Way Alignment.

c.     *Time of the Essence. Time is of the essence for the terms of this Agreement.*

9.     Terms of Conveyances. The Right-of-Way Corridor and Stormwater Sites shall all be conveyed to the County free of charge without expectation of consideration or credits, free and clear of all liens and encumbrances other than the Lease and such matters of title as exist as of the date of this Agreement. For purposes of clarification, in no event shall such encumbrances as exist as of the date of this Agreement include any monetary liens. County shall pay for the closing costs and the taxes will be prorated at the time of closing.

10.    Effective Date. This Agreement shall become effective upon: i) the latter execution by all of the Parties; and, ii) the approval and effectiveness of a Comprehensive Plan Amendment, File No. COMPAMD 2017-01 Robinson ("Effective Date").

11.    Recording and Covenant Running with Title. This Agreement shall be recorded in the public records of St. Johns County. The obligation to make the conveyances described in this Agreement constitutes a covenant running with title to land. Once the Right-of-Way Alignment and Stormwater Sites are conveyed, the County, at the written request of Owner, shall provide recordable satisfaction that meet the criteria for release of all other property of Owner set forth in this Section 11 at the request of the Owner. *If the County has not requested the conveyance as provided hereunder by January 15, 2034,* Owner's obligations under the Agreement shall terminate as of said January 15, 2034 date, unless the parties have mutually agreed to extend such date. The Parties agree to cooperate in good faith to issue and secure the Releases and Satisfactions in a timely manner.

4

12.    Integration. No modification, amendment, or release of the terms or conditions contained herein shall be effective unless contained in a written document executed by the Owner and the County.

13.    Venue and Controlling Law. Any controversies or legal issues arising out of this Agreement and any action involving the enforcement or interpretation of any rights hereunder shall be submitted to the Jurisdiction of the State Court of the Seventh Judicial Circuit of St. Johns County, Florida, and shall be governed by the laws of the State of Florida.

14.    Incorporation. All exhibits attached hereto contain additional terms of this Agreement and are incorporated herein by reference.

15.    Further Assurances. The parties shall execute, acknowledge and deliver and cause to be done, executed, acknowledged and delivered all further assurances and shall perform such acts as reasonably be requested of them in order to carry out this Agreement.

16.    Counterparts. This Agreement may be executed in two (2) counterparts, each of which may be deemed to be the original. It shall be fully executed when each party whose signature is required has signed at least one counterpart even though no one counterpart contains the signatures of all parties of this Agreement. Facsimile copies shall be deemed originals.

17.    Enforcement. Each party to this Agreement shall have all remedies available at law or in equity, including specific performance for conveyance of the Right-of-Way Alignment and Stormwater Sites. If any provision of this Agreement is declared invalid or unenforceable by a court of competent jurisdiction, the invalid or unenforceable provisions will be stricken from the Agreement, and the balance of the Agreement will remain in full force and effect as long as doing so would not affect the overall purpose and intent of the Agreement.

18.    Notices. Notices or correspondence related to the agreement shall be sent to the following:

> For Owner:
>
> Robinson Improvement Company
> C/O Garrett, Michael W.
> Garrett, Wood & CPA., PA
> 4417 Beach Blvd. Suite 200
> Jacksonville, Florida 32207
>
> For County:
>
> St. Johns County
> County Administration
> 500 San Sebastian View
> St. Augustine, Florida 32084

SGR/19616000.5

With Copy to:
St. Johns County
Office of the County Attorney
500 San Sebastian View
St. Augustine, Florida 32084

[SIGNATURES ON FOLLOWING PAGES]

6

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals the day and year written above.

Signed, witnessed, executed and acknowledged on this ___17___ day of _January_ , 20_19_

Signed, Sealed and Delivered
in the presence of:

_Pam Halterman_
Print Name _Pam Halterman_


_Sindy Wiseman_
Print Name _Sindy Wiseman_

Attest:

By: _Pam Halterman_
Hunter S. Conrad
Clerk of Court

**St. Johns County, Florida**, a
political subdivision of the State of Florida,
by its Board of County Commissioners

_Paul M. Waldron_
Paul M. Waldron, Chair


Legally Sufficient _[signature]_

7

**Signed and Sealed in Our
Presence as Witnesses:**

(Sign) _Taylor Huerta_
(Print) _Taylor Huerta_

(Sign) _Megan Cleary_
(Print) _Megan Cleary_

**Owner:**

_Walton T. Carter, Jr._

**Robinson Improvement Company**
By: Walton T. Carter, Jr.
Its: President

**STATE OF GEORGIA
COUNTY OF LOWNDES**

The foregoing instrument was acknowledged before me this _10th_ day of January, 2019, by Walton T. Carter, Jr. who is personally known to me or has produced a Georgia Driver's License as identification.

_____
Notary Public
My Commission Expires: _April 30, 2022_

8

Exhibit "A" TO
AGREEMENT FOR DONATION OF RIGHT OF WAY AND STORMWATER SITES



EXHIBIT "A" CONTINUED TO
AGREEMENT FOR DONATION OF RIGHT OF WAY AND STORMWATER SITES

Lands owned by Robinson Improvement
Company in St. Johns County, Fla.

SCHEDULE "A"

| DESCRIPTION | SEC. | TWP. | RGE. | ACRES |
|---|---|---|---|---|
| E½ of SW¼; SW¼ of SW¼ | 22 | 7 S. | 29 E. | 120 |
| NW¼ EXCEPT 2.5 acres RW of FEC RY & RW of Rd. No. S214 shown in DB246/185 & 1 acr shown in DB261/14 | 27 | 7 S. | 29 | 156.50 |
| All W 3/4 lying S of Tocoi Road No. S214 EXCEPT part in RW of Rd. No. I-95 shown in DRB765 PG 460, DB/198 PG 560 | 29 | 7 S. | 29 E. | 30 |
| All EXCEPT Lots sold in West St. Augustine Subd. RW of Tocoi Rd. No. S214 shown in DB246/185 | 31 | 7 S. | 29 E. | 680 |
| Lots 2, 3, all Lot 4 EXCEPT RW of Tocoi Rd. No. S214 shown in DB246/185, Lots 5, 6, 7 & 5½ | 32 | 7 S. | 29 E. | 699 |
| Lot 8 | 32 | 7 S. | 29 E. | 40 |
| All W½ of SW¼ lying W of Rd. I-95 DR 129/10 | 33 | 7 S. | 29 E. | 62.91 |
| Broadwell Sub. L25, 26 EXCEPT W 6 ft. in Rd. RW | 45 | 7 S. | 29 E. | .50 |
| All | 13 | 7 S. | 28 E. | 628 |
| E½ | 23 | 7 S. | 28 E. | 320 |
| All | 24 | 7 S. | 28 E. | 640 |
| All EXCEPT RW of Rd. No. S214 shown in D BK 246, PG 185 | 25 | 7 S. | 28 E. | 637 |
| E½ & S½ of SW¼ | 26 | 7 S. | 28 E. | 400 |
| S½ & all NE¼ lying S of Tocoi Rd. No. S214 EXCEPT 20.531 acres shown in DB 231/424 | 33 | 7 S. | 28 E. | 364.47 |
| W½ of W½ & all E½ & E½ of W½ lying S of Tocoi Rd. No. S214 | 34 | 7 S. | 28 E. | 838 |
| All EXCEPT part of NW¼ of NW¼ lying N of Rd. No. S214 & EXCEPT 6 acres in RW of Tocoi Rd. #S214 | 35 | 7 S. | 28 E. | 615.40 |
| Part of NW¼ of NW¼ lying N of Tocoi Rd. No. S214 | 35 | 7 S. | 28 E. | 6 |
| All EXCEPT 7 acres in RW of Tocoi Rd. No. S214 | 36 | 7 S. | 28 E. | 627.70 |
| All W½ of W½ lying NW of FEC RY DB 197 PG 267 | 4 | 8 S. | 29 E. | 103 |
| All EXCEPT RW of FEC RY Rd. | 5 | 8 S. | 29 E. | 633.50 |
| All | 6 | 8 S. | 29 E. | 628 |
| All | 7 | 8 S. | 29 E. | 631 |
| All lying NW of FEC RY | 8 | 8 S. | 29 E. | 461 |
| All SW¼ of NW¼ and NW¼ of SW¼ lying W of RW of FEC RY DB 166 PG 459 | 17 | 8 S. | 29 E. | 30 |

-2-

| DESCRIPTION | SEC. | TWP. | RGE. | ACRES |
|---|---|---|---|---|
| All N½ of NW¼ lying NW of FEC RY | 17 | 8 S. | 29 E. | 50 |
| W½ | 18 | 8 S. | 29 E. | 313 |
| All | 1 | 8 S. | 28 E. | 640 |
| All | 2 | 8 S. | 28 E. | 640 |
| All | 3 | 8 S. | 28 E. | 653 |
| All EXCEPT SW¼ & SW¼ of NW¼ | 4 | 8 S. | 28 E. | 440 |
| Lots 1, 2, 3, 7, 8, 9 & 12 & all Lots 4, 5, 6, & 10 lying E of RW of Rd. No. S13A | 9 | 8 S. | 28 E. | 380 |
| All | 10 | 8 S. | 28 E. | 640 |
| All | 11 | 8 S. | 28 E. | 641 |
| All | 12 | 8 S. | 28 E. | 644 |
| N½ | 13 | 8 S. | 28 E. | 318 |
| All EXCEPT RW of Rd. | 15 | 8 S. | 28 E. | 635 |

14,966.98

Exhibit "B" to
Agreement with Robinson/County

'79    863                                          REC 400 PAGE 551

MEMORANDUM AGREEMENT

THIS AGREEMENT, made and entered into in duplicate this
19th day of February, 1971, by and between ROBINSON IMPROVEMENT
COMPANY, a Florida corporation having a place of business in St.
Augustine, Florida, hereinafter called "ROBINSON", which term shall
include its successors and assigns, and HUDSON PULP & PAPER CORP.,
a Maine corporation having a place of business in Palatka, Florida,
hereinafter called "HUDSON", which term shall include its successors
and assigns,

W I T N E S S E T H :

WHEREAS, the parties hereto entered into an agreement
dated February 19, 1971, containing in detail the provisions which
are referred to in this memorandum, which said agreement provides
that a memorandum thereof shall be entered into between the parties
and placed of record as notice to everyone of the evidence of such
an agreement, and

WHEREAS, this agreement is the memorandum of said agree-
ment of February 19, 1971, by and between ROBINSON and HUDSON.

NOW, THEREFORE, in consideration of the premises and
further in consideration of the sum of One Dollar ($1.00) and other
good and valuable considerations paid by HUDSON to ROBINSON, the
receipt whereof is hereby acknowledged, this memorandum is entered
into between the parties hereto for the purpose of recording notice
to everyone that ROBINSON:

(a)   Has granted to HUDSON, its successors and assigns,
the complete and unrestricted control of the lands in St. Johns
County, Florida, described in Schedule "A" hereto attached and by
specific reference made a part hereof, for and during fifty-five
(55) years beginning February 20, 1971, and ending at midnight on
February 19, 2026, under and subject to the terms, provisions and
conditions set forth in said agreement dated February 19, 1971,
and subject to the performance by the parties hereto of all of the




covenants, terms and conditions set forth in said agreement to be kept, observed and performed by them respectively;

(b)  Has granted to HUDSON, its successors and assigns, during the term of said agreement of February 19, 1971, certain rights with respect to all oil, gas and minerals produced on or from said lands described in Schedule "A" hereto attached, which are removed and severed therefrom, and a right to receive a certain part of the proceeds from the sale of such oil, gas and minerals or the rights pertaining thereto; and

(c)  Has granted to HUDSON, its successors and assigns, subject to the terms, provisions, conditions, restrictions and limitations contained in said agreement of February 19, 1971, the right to purchase the lands described in Schedule "A" hereto attached, if ROBINSON shall decide to sell the same in whole or in part during the term of said agreement of February 19, 1971.

Reference is hereby made to said agreement of February 19, 1971, for a full and complete statement of the covenants, conditions, terms and provisions to be kept, observed and performed by the parties hereto and by such reference, all of the conditions, terms and provisions of said agreement in any way relating or applicable to the rights and privileges granted to HUDSON thereunder are intended to be and shall for all purposes be deemed to have been incorporated herein as fully as though herein set forth at length.

This agreement shall constitute full notice of all of the covenants, terms and conditions of said agreement of February 19, 1971, to everyone now or hereafter interested in said lands described in Schedule "A" hereto attached, by way of ownership, lien or otherwise.

Duplicate copies of said agreement dated February 19, 1971, are on file in the office of Hudson Pulp & Paper Corp., Woodlands Division, at Palatka, Florida, and The St. Augustine National Bank, for Robinson Improvement Company, at St. Augustine, Florida.

-2-

OFF REC 400 PAGE 563

The agreement between ROBINSON and HUDSON dated December 29, 1956, recorded in Deed Book 233, page 479 of the public records of St. Johns County, Florida, is superseded by the agreement of February 19, 1971, of which this is a memorandum, and said agreement of December 29, 1956, is hereby cancelled and declared to be of no further force or effect.

IN WITNESS WHEREOF, ROBINSON and HUDSON have caused these presents to be executed and their respective corporate seals to be hereunto affixed, by their respective duly authorized officers, the day and year first above written.

Signed, sealed and delivered
in the presence of:

ROBINSON IMPROVEMENT COMPANY

By: _____
    Its        President

Attest: _____
        Its    Secretary
                (CORPORATE SEAL)

_____
_____
As to Robinson

HUDSON PULP & PAPER CORP.

By: _____
    Its

Attest: _____
        Its
                (CORPORATE SEAL)

_____
_____
As to Hudson

STATE OF VIRGINIA    }
COUNTY OF CULPEPER   }

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State and County aforesaid to take acknowledgments, personally appeared MARGARET LEWIS DYER and JAMES M. DYER, well known to me to be the President and Secretary respectively, of ROBINSON IMPROVEMENT COMPANY, which executed the foregoing instrument, and severally acknowledged executing the same freely and voluntarily under authority duly vested in them by said corporation and that the seal affixed thereto is the true corporate seal of said corporation.

WITNESS my hand and official seal in the County and State last aforesaid this ___ day of February, A. D., 1971.

_____
NOTARY PUBLIC
My commission expires: 1/16/74

-3-

REC 400 PAGE 564

STATE OF NEW YORK )
COUNTY OF NEW YORK )

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State and County aforesaid to take acknowledgments, personally appeared ~~XXXXXXXX~~ RICHARD MAZER ~~XXXXXXXXXXXXXX~~ JOHN H. MAASS and well known to me to be the Executive Vice President and Asst. Secretary respectively, of HUDSON PULP & PAPER CORP., which executed the foregoing instrument, and severally acknowledged executing the same freely and voluntarily under authority duly vested in them by said corporation and that the seal affixed thereto is the true corporate seal of said corporation.

WITNESS my hand and official seal in the County and State last aforesaid this 21 day of February, ~~November~~ 1978.

NOTARY PUBLIC
My commission expires: 3-30-79

-4-

OFF
REG 409 PAGE 565

Lands owned by Robinson Improvement
Company in St. Johns County, Fla.

SCHEDULE "A"

| DESCRIPTION | SEC. | TWP. | RGE. | ACRES |
|---|---|---|---|---|
| E½ of SW¼; SW¼ of SW¼ | 22 | 7 S. | 29 E. | 120 |
| NW¼ EXCEPT 2.5 acres RW of FEC RY & RW of Rd. No. S214 shown in DB246/185 & 1 acre shown in DB261/714 | 27 | 7 S. | 29 | 156.50 |
| All W 3/4 lying S of Tocoi Road No. S214 EXCEPT part in RW of Rd. No. 1-95 shown in ORB/65 PG 460 DB/198 PG 560 | 29 | 7 S. | 29 E. | 30 |
| All EXCEPT Lots sold in West St. Augustine Subd. RW of Tocoi Rd. No. S214 shown in DB246/185 | 31 | 7 S. | 29 E. | 660 |
| Lots 2, 3, all Lot 4 EXCEPT RW of Tocoi Rd. No. S214 shown in DB246/185, Lots 5, 6, 7 & S½ | 32 | 7 S. | 29 E. | 639 |
| Lot 8 | 32 | 7 S. | 29 E. | 40 |
| All W½ of SW¼ lying W of Rd. 1-95 OR 129/10 | 33 | 7 S. | 29 E. | 62.91 |
| Broadwell Sub. L25, 26 EXCEPT W 6 ft. in Rd. RW | 45 | 7 S. | 29 E. | .50 |
| All | 13 | 7 S. | 28 E. | 628 |
| E½ | 23 | 7 S. | 28 E. | 320. |
| All | 24 | 7 S. | 28 E. | 640 |
| All EXCEPT RW of Rd. No. S214 shown in D.BK 246, PG185 | 25 | 7 S. | 28 E. | 637 |
| E½ & S½ of SW¼ | 26 | 7 S. | 28 E. | 400. |
| S½ & all NE¼ lying S of Tocoi Rd. No. S214 EXCEPT 20.531 acres shown in DB 231/424 | 33 | 7 S. | 28 E. | 364.47 |
| W½ of W½ & all E½ & E½ of W½ lying S of Tocoi Rd. No. S214 | 34 | 7 S. | 28 E. | 639 |
| All EXCEPT part of NW¼ of NW¼ lying N of Rd. No. S214 & EXCEPT 6 acres in RW of Tocoi Rd. #S214 | 35 | 7 S. | 28 E. | 615.40 |
| Part of NW¼ of NW¼ lying N of Tocoi Rd. No. S214 | 35 | 7 S. | 28 E. | 6 |
| All EXCEPT 7 acres in RW of Tocoi Rd. No. S214 | 36 | 7 S. | 28 E. | 627.70 |
| All W½ of W½ lying NW of FEC RY DB 197 PG 267 | 4 | 8 S. | 29 E. | 103 |
| All EXCEPT RW of FEC RY Rd. | 5 | 8 S. | 29 E. | 633.50 |
| All | 6 | 8 S. | 29 E. | 628 |
| All | 7 | 8 S. | 29 E. | 631 |
| All lying NW of FEC RY | 8 | 8 S. | 29 E. | 461 |
| All SW¼ of NW¼ and NW¼ of SW¼ lying W of RW of FEC RY DB 166 PG 459 | 17 | 8 S. | 29 E. | 30 |

DEE 400 PAGE 208

-2-

| DESCRIPTION | SEC. | TWP. | RGE. | ACRES |
|---|---|---|---|---|
| All N½ of NW¼ lying NW of FEC RY | 17 | 8 S. | 29 E. | 50 |
| W½ | 18 | 8 S. | 29 E. | 313 |
| All | 1 | 8 S. | 28 E. | 640 |
| All | 2 | 8 S. | 28 E. | 640 |
| All | 3 | 8 S. | 28 E. | 653 |
| All EXCEPT SW¼ & SW¼ of NW¼ | 4 | 8 S. | 28 E. | 440 |
| Lots 1, 2, 3, 7, 8, 9 & 12 & all Lots 4, 5, 6, & 10 lying E of RW of Rd. No. S13A | 9 | 8 S. | 28 E. | 380 |
| All | 10 | 8 S. | 28 E. | 640 |
| All | 11 | 8 S. | 28 E. | 641 |
| All | 12 | 8 S. | 28 E. | 644 |
| N½ | 13 | 8 S. | 28 E. | 318 |
| All EXCEPT RW of Rd. | 15 | 8 S. | 28 E. | 635 |

14,966.98

FILED AND RECORDED IN
PUBLIC RECORDS IN
ST. JOHNS COUNTY, FLA

1975 JAN 18 AM 11: 59

CLERK CIRCUIT COURT

RESOLUTION NO. 2019- 30

A RESOLUTION BY THE BOARD OF COUNTY COMMISSIONERS OF
ST. JOHNS COUNTY, FLORIDA, APPROVING THE TERMS AND
AUTHORIZING THE CHAIR, TO EXECUTE TWO AGREEMENTS FOR
DONATION OF RIGHT-OF-WAY AND STORMWATER SITES FOR
THE FUTURE COUNTY ROAD 2209.

## RECITALS

**WHEREAS**, Robinson Improvement Company, has agreed to donate to the County a minimum of 250 foot wide right-of-way corridor of approximately 7.4 miles, along with corresponding and necessary adjacent Stormwater Sites, for a proposed County Road 2209 from County Road 208 to County Road 305 in Central St. Johns County, substantially in the form attached hereto as Exhibit "A," incorporated by reference and made a part hereof; and

**WHEREAS**, West Saint Augustine Land and Timber, LLC., has agreed to donate a minimum of approximately 135 acres of land in the Agreement for Donation of Right-of-Way and Stormwater Sites, attached hereto as Exhibit "B", incorporated by reference and made a part hereof, for a proposed 250 foot right-of-way corridor along with corresponding and necessary adjacent Stormwater Sites, for a proposed County Road 2209 from County Road 208 to County Road 305 in Central St. Johns County; and

**WHEREAS**, County Road 2209 is proposed to be a new north/south roadway (ultimately a six lane facility) providing necessary mobility and connections, connecting Race Track Road to County 204. Portion of this corridor has been constructed from Race Track Road to County 210 which has a connection to State Road 9B. Subsequent portions of County Road 2209 south of County Road 210 will have an interchange connection to the First Coast Expressway. In addition, County Road 2209 will also provide a reliever to the already congested I-95 as a parallel corridor; and

**WHEREAS**, Final alignment of the Right-of-Way Alignment and associated Stormwater Sites may need to be modified by mutual agreement of Parties to avoid to the greatest extent possible wetland impacts and avoid an inadequate Right-of-Way Alignment for the purposes of construction of County Road 2209; and

**WHEREAS**, a portion of the property owned by Robinson Improvement Company was sold south of CR214 and a Memorandum of Agreement to Dedicate Road, attached hereto as Exhibit "C," incorporated by reference and made a part hereof, for County Road 2209 was recorded in Official Records Book 4658, page 477, of the Public Records of St. Johns County, Florida; and

**WHEREAS**, it is in the public interest for the County to accept the donation of the Property.

**NOW THEREFORE, BE IT RESOLVED** by the Board of County Commissioners of St. Johns County, Florida, as follows:

**Section 1.** The above Recitals are incorporated by reference into the body of this Resolution and such Recitals are adopted as findings of fact.

**Section 2.** The Board of County Commissioners hereby approves the terms of the Agreements and authorizes the Chair, to execute the Agreements for Donation of Right-of-Way and Stormwater Sites, substantially in the form thereof, for the future County Road 2209 and take all steps necessary to move forward in acquiring the properties.

**Section 3.** To the extent that there are typographical errors that do not change the tone, tenor, or concept of this Resolution, then this Resolution may be revised without subsequent approval by the Board of County Commissioners.

**Section 4.** The Clerk is instructed to record the two original Agreements for Donation of Right-of-Way and Stormwater Sites in the Public Records of St. Johns County, Florida and file the Memorandum of Agreement to Dedicate Road in the Clerk's Office.

**PASSED AND ADOPTED** by the Board of County Commissioners of St. Johns County, Florida, this 15 day of January, 2019.

BOARD OF COUNTY COMMISSIONERS
OF ST. JOHNS COUNTY, FLORIDA

By: _Paul M. Waldron_
Paul M. Waldron, Chair

ATTEST: Hunter S. Conrad, Clerk

By: _Pam Watterman_
Deputy Clerk

RENDITION DATE 1/17/19



EXHIBIT C

Public Records of St. Johns County, FL
Clerk number: 2019005153
BK: 4671 PG: 44
1/24/2019 9:57 AM
Recording $69.50

Prepared by:
Paolo S. Soria, Esq.
St. Johns County
Office of the County Attorney
500 San Sebastian View
St. Augustine, FL 32246

*Res 2019-30*

## AGREEMENT FOR DONATION OF
## RIGHT-OF-WAY AND STORMWATER SITES

**THIS AGREEMENT FOR DONATION OF RIGHT-OF-WAY AND STORMWATER SITES** ("Agreement"), made this *17th* day of *January*, 2019, by and between **WEST SAINT AUGUSTINE LAND AND TIMBER LLC**, a Delaware limited Liability Company (hereinafter referred to as the "Owner"), whose address is c/o Dennis Carey, Managing Member, 977 Stagecoach Road, Oglethorpe, GA 31068 ("Owner") and **ST. JOHNS COUNTY, FLORIDA**, a political subdivision of the State of Florida, (hereinafter referred to as the "County"), whose address is 500 San Sebastian View, St. Augustine, Florida 32084.

### RECITALS:

**WHEREAS**, the purpose of this Agreement is to memorialize the Agreement of Owner to donate to County approximately 135 acres of land for a proposed 250 foot wide right-of-way corridor, including corresponding and necessary adjacent Stormwater Sites, for a proposed County Road 2209 from County Road 208 to County Road 305 in Central St. Johns County; and

**WHEREAS**, the Owner owns a portion of that certain property located in St. Johns County more particularly described and depicted on attached Exhibit "A", incorporated by reference and made a part hereof, (said proposed right of way area described and depicted on Exhibit "A" being hereinafter collectively referred to as the "Right-of-Way Alignment") ; and

**WHEREAS**, County Road 2209 is proposed to be a new north/south roadway (ultimately a six lane facility) providing necessary mobility and connections, connecting Race Track Road to County Road 204. A portion of this corridor has been constructed from Race Track Road to County Road 210 which has a connection to State Road 9B. Subsequent portions of County Road 2209 south of County Road 210 will have an interchange connection to the First Coast Expressway. In addition, County Road 2209 will also provide a reliever to the already congested I-95 as a parallel corridor; and

1

**WHEREAS**, Owner has offered to donate that portion of the Right-of-Way Alignment, along with the corresponding and necessary adjacent Stormwater Sites consisting of approximately 135 acres, which is owned by Owner, to the County free of charge without expectation of consideration or credits, and free and clear of all encumbrances, except those matters subject to which Owner acquired its title, including that certain lease Agreement between Robinson Improvement Company and Hudson Pulp and Paper dated February 19, 1971, as last assigned to Weyerhaeuser Corporation, which lease expires in February 19, 2026 ("hereinafter "Lease"), as provided for under Section 8 of that certain unrecorded agreement dated as of July 25, 2018 (the "West Donation Agreement"), as evidenced by that certain Memorandum of Agreement to Dedicate Road recorded as Instrument #2018091258, at Book 4658, Page 477 St. Johns County, Florida records; and

**WHEREAS**, the parties acknowledge that the Lease will expire on said February 19, 2026 and will not be renewed by Owner; and

**WHEREAS**, the Parties acknowledge that the conveyance of the Right-of-Way Alignment as generally shown and depicted on Exhibit "A" and the conveyance of the corresponding and necessary Stormwater Sites reasonably constitutes a donation for public use and allows the County to construct County Road 2209; and

**WHEREAS**, final alignment of the Right-of-Way Alignment and associated Stormwater Sites may need to be modified by mutual agreement of Parties to avoid to the greatest extent possible wetland impacts and avoid an inadequate Right-of-Way Alignment for the purposes of construction of County Road 2209; and

**WHEREAS**, this Agreement is contingent upon the approval and effectiveness of a Comprehensive Plan Amendment, File No. COMPAMD 2017-01 Robinson; and

**WHEREAS**, it is in the public interest for the County to accept the donation of the Property.

**NOW, THEREFORE,** in consideration of the covenants and agreements herein contained, Owner and the County agree as follows:

1.    Recitals. The Recitals above are true and correct and are incorporated into this Agreement.

2.    Legally Binding Commitment; Waiver of Impact Fee Credits. This Agreement constitutes a legally binding commitment by Owner to provide and donate that portion of the Right-of-Way Alignment and Stormwater Sites that is owned by Owner and consists of approximately 135 acres, free of charge with no liens or encumbrances, except those matters subject to which Owner acquired title, including the Lease, as defined above, and without expectation of consideration, impact fee credits, or payment for transportation mitigation improvements. Owner waives any impact fee credits or any other credit towards transportation mitigation associated with the conveyance of the Right-of-Way Alignment and Stormwater sites.

SGR/19616000.3
JAX\2763000_3

3.      Appropriation to Public Use.  This Agreement constitutes a donation for public use and does not constitute a taking for public use under the right of eminent domain.

4.      Right-of-Way Alignment.  The Parties acknowledge that the Property depicted on Exhibit "A" depicts the 250 foot wide Right-of-Way corridor for County Road 2209, consists of approximately 130 acres, and is subject to reasonable reconfiguration or relocation per Section 6 contained herein.

5.      Drainage and Detention. Parties acknowledge that the Property depicted on Exhibit "A" depicts the 250 foot wide Right-of-Way corridor for County Road 2209 and does not depict Stormwater Sites necessary to allow drainage, retention and outfall.  Owner shall also convey to the County approximately five (5) acres of commercially reasonable Stormwater Sites on the property owned by Owner for drainage allowing outfall from the Right-of-Way in locations to be determined and agreed upon by the Parties. The Stormwater Sites shall be designed by the County to be appropriate for retention of a six (6) lane facility from County Road 208 to County Road 305 and shall be adjacent to the Right-of-Way Alignment.

6.      Reasonable Right of Reconfiguration or Relocation.   The Parties acknowledge that the proposed Right-of-Way Alignment depicted on Exhibit "A" is for planning purposes and may not reflect the final corridor conveyed to the County. If the Right-of-Way Alignment renders the Right-of-Way Alignment inadequate in the sole, reasonable discretion of the County, whether due to impaired access or impact to the Right-of-Way, or to the utility or functionality of the Right-of-Way, the parties shall cooperate in all reasonable respects to reconfigure or relocate the Right-of-Way corridor.  The County shall notify Owner of the County's decision that the Right-of-Way corridor is inadequate as soon as practicable, to maximize the opportunity to reconfigure or move.  Time is of the essence in this subparagraph, to minimize the Parties' inconvenience as a result of changes to configurations or locations.

7.      Obligation for Legal, Survey, and Engineering costs.  Owner shall not be responsible for any legal, survey, or engineering work associated with donation of the Right-of-Way Alignment or the Stormwater Sites.

8.      Timing of Conveyances.  Owner shall convey the lands of approximately 135 acres as follows:

        a.      Right-of-Way Alignment.  Upon written request of the County and Robinson Improvement Company, and following receipt of a legal description and survey prepared by the County or its agents or contractors, that portion of the Right-of-Way Alignment depicted on Exhibit "A" owned by Owner, as may be reconfigured or relocated pursuant to the terms hereof, shall be conveyed to St. Johns County within one hundred eighty (180) days of Owner's receipt of such written request.

        b.      Stormwater Sites.  Upon written request of the County and Robinson Improvement Company, and following receipt of a legal description and survey by

SGR/18616000.3
JAX\2753000_3

the County or its agents or contractors, that portion of the Stormwater Sites as are owned by Owner sufficient to allow outfall from the Right-of-Way Alignment shall be conveyed to St. Johns County within one hundred eighty (180) days of Owner's receipt of such written request.

        c.      <u>Time of the Essence</u>.  Time is of the essence for the terms of this Agreement.

9.    <u>Terms of Conveyances</u>.  The Right-of-Way Corridor and Stormwater Sites shall all be conveyed to the County free of charge without expectation of consideration or credits, free and clear of all liens and encumbrances other than those matters subject to which Owner acquired its title, including the Lease.  County shall pay for the closing costs and the taxes will be prorated at the time of closing.

10.    <u>Effective Date</u>.  This Agreement shall become effective upon: i) the latter execution by all of the Parties; and, ii) the approval and effectiveness of a Comprehensive Plan Amendment, File No. COMPAMD 2017-01 Robinson ("Effective Date").

11.    <u>Recording and Covenant Running with Title; Expiration and Termination</u>. This Agreement shall be recorded in the public records of St. Johns County.  The obligation to make the conveyances described in this Agreement constitutes a covenant running with title to land.  Once the Right-of-Way Alignment and Stormwater Sites are conveyed, the County at the written request of Owner shall provide and record a satisfaction that releases all other property of Owner. If the County has not requested the conveyances as provided hereunder so that Owner can reasonably consummate the conveyances prior to December 21, 2027, Owner's obligations under this Agreement shall terminate on the close of the day, December 21, 2027 (unless such date is mutually extended in writing by County, Owner, and Robinson Improvement Company), and after such date this Agreement shall no longer provide constructive notice.  On such expiration, the County shall upon written request of Owner record a satisfaction that terminates this instrument.  The Parties agree to cooperate in good faith to issue and secure the Releases and Satisfactions in a timely manner.

12.    <u>Integration</u>. No modification, amendment, or release of the terms or conditions contained herein shall be effective unless contained in a written document executed by the Owner and the County.

13.    <u>Venue and Controlling Law.</u> Any controversies or legal issues arising out of this Agreement and any action involving the enforcement or interpretation of any rights hereunder shall be submitted to the Jurisdiction of the State Court of the Seventh Judicial Circuit of St. Johns County, Florida, and shall be governed by the laws of the State of Florida.

14.    <u>Incorporation</u>. All exhibits attached hereto contain additional terms of this Agreement and are incorporated herein by reference.

4

15.    Further Assurances. The parties shall execute, acknowledge and deliver and cause to be done, executed, acknowledged and delivered all further assurances and shall perform such acts as reasonably be requested of them in order to carry out this Agreement.

16.    Counterparts. This Agreement may be executed in two (2) counterparts, each of which may be deemed to be the original. It shall be fully executed when each party whose signature is required has signed at least one counterpart even though no one counterpart contains the signatures of all parties of this Agreement. Facsimile copies shall be deemed originals.

17.    Enforcement. Each party to this Agreement shall have all remedies available at law or in equity, including specific performance for conveyance of the Right-of-Way Alignment and Stormwater Sites. If any provision of this Agreement is declared invalid or unenforceable by a court of competent jurisdiction, the invalid or unenforceable provisions will be stricken from the Agreement, and the balance of the Agreement will remain in full force and effect as long as doing so would not affect the overall purpose and intent of the Agreement.

18.    Notices. Notices or correspondence related to the agreement shall be sent to the following:

For Owner:

West Saint Augustine Land and Timber, LLC
Attn: Dennis Carey
977 Stage Coach Road
Oglethorpe, GA 31068

With Copy to:
John T. Sefton
Rogers Towers, P.A.
1301 Riverplace Blvd #1500
Jacksonville, FL 32207

For County:

St. Johns County
County Administration
500 San Sebastian View
St. Augustine, Florida 32084

With Copy to:
St. Johns County
Office of the County Attorney
500 San Sebastian View
St. Augustine, Florida 32084

[SIGNATURES ON FOLLOWING PAGES]

5

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals the day and year written above.

Signed, witnessed, executed and acknowledged on this ___17___ day of January 2019

Signed, Sealed and Delivered
in the presence of:

*Pam Halterman*

Print Name _Pam Ha Herman_

**St. Johns County, Florida,** a
political subdivision of the State of Florida,
by its Board of County Commissioners

*Paul M. Waldron*

Paul M. Waldron, Chair

*Sindy Wiseman*

Print Name _Sindy Wiseman_

Attest:

By: _Pam Halterman_

Hunter S. Conrad
Clerk of Court

Legally Sufficient _____

6

SGR/19516000.3
JAX\2753000_3

**Signed and Sealed in Our
Presence as Witnesses:**

(Sign) _John Sullivan_
(Print) _John Sullivan_

(Sign) _____
(Print) _____

Owner:

_____

**WEST SAINT AUGUSTINE LAND AND
TIMBER, LLC**
By: Dennis Carey
Its: Managing Member

STATE OF _Georgia_ ; COUNTY OF _Macon_

The foregoing instrument was acknowledged before me this _11th_ day _January_ _____,
2019, by _Dennis Carey_ who is personally known to me or has produced _____
as identification.

BRENDA PETRO
NOTARY
PUBLIC
Exp. Nov. 10, 2021
MACON COUNTY, GA

_Brenda Petroski_
Notary Public
My Commission Expires: _11/10/2021_

7

SGR/19616000.3
JAX\2753000_3

Exhibit "A" TO
AGREEMENT FOR DONATION OF RIGHT OF WAY AND STORMWATER SITES



RESOLUTION NO. 2019- 30

A RESOLUTION BY THE BOARD OF COUNTY COMMISSIONERS OF
ST. JOHNS COUNTY, FLORIDA, APPROVING THE TERMS AND
AUTHORIZING THE CHAIR, TO EXECUTE TWO AGREEMENTS FOR
DONATION OF RIGHT-OF-WAY AND STORMWATER SITES FOR
THE FUTURE COUNTY ROAD 2209.

## RECITALS

**WHEREAS,** Robinson Improvement Company, has agreed to donate to the County a minimum of 250 foot wide right-of-way corridor of approximately 7.4 miles, along with corresponding and necessary adjacent Stormwater Sites, for a proposed County Road 2209 from County Road 208 to County Road 305 in Central St. Johns County, substantially in the form attached hereto as Exhibit "A," incorporated by reference and made a part hereof; and

**WHEREAS,** West Saint Augustine Land and Timber, LLC., has agreed to donate a minimum of approximately 135 acres of land in the Agreement for Donation of Right-of-Way and Stormwater Sites, attached hereto as Exhibit "B", incorporated by reference and made a part hereof, for a proposed 250 foot right-of-way corridor along with corresponding and necessary adjacent Stormwater Sites, for a proposed County Road 2209 from County Road 208 to County Road 305 in Central St. Johns County; and

**WHEREAS,** County Road 2209 is proposed to be a new north/south roadway (ultimately a six lane facility) providing necessary mobility and connections, connecting Race Track Road to County 204. Portion of this corridor has been constructed from Race Track Road to County 210 which has a connection to State Road 9B. Subsequent portions of County Road 2209 south of County Road 210 will have an interchange connection to the First Coast Expressway. In addition, County Road 2209 will also provide a reliever to the already congested I-95 as a parallel corridor; and

**WHEREAS,** Final alignment of the Right-of-Way Alignment and associated Stormwater Sites may need to be modified by mutual agreement of Parties to avoid to the greatest extent possible wetland impacts and avoid an inadequate Right-of-Way Alignment for the purposes of construction of County Road 2209; and

**WHEREAS,** a portion of the property owned by Robinson Improvement Company was sold south of CR214 and a Memorandum of Agreement to Dedicate Road, attached hereto as Exhibit "C," incorporated by reference and made a part hereof, for County Road 2209 was recorded in Official Records Book 4658, page 477, of the Public Records of St. Johns County, Florida; and

**WHEREAS,** it is in the public interest for the County to accept the donation of the Property.

**NOW THEREFORE, BE IT RESOLVED** by the Board of County Commissioners of St. Johns County, Florida, as follows:

**Section 1.** The above Recitals are incorporated by reference into the body of this Resolution and such Recitals are adopted as findings of fact.

**Section 2.** The Board of County Commissioners hereby approves the terms of the Agreements and authorizes the Chair, to execute the Agreements for Donation of Right-of-Way and Stormwater Sites, substantially in the form thereof, for the future County Road 2209 and take all steps necessary to move forward in acquiring the properties.

**Section 3.** To the extent that there are typographical errors that do not change the tone, tenor, or concept of this Resolution, then this Resolution may be revised without subsequent approval by the Board of County Commissioners.

**Section 4.** The Clerk is instructed to record the two original Agreements for Donation of Right-of-Way and Stormwater Sites in the Public Records of St. Johns County, Florida and file the Memorandum of Agreement to Dedicate Road in the Clerk's Office.

**PASSED AND ADOPTED** by the Board of County Commissioners of St. Johns County, Florida, this 15 day of January, 2019.

BOARD OF COUNTY COMMISSIONERS
OF ST. JOHNS COUNTY, FLORIDA

By: _Paul M. Waldron_

Paul M. Waldron, Chair

ATTEST: Hunter S. Conrad, Clerk

By: _Pam Hultman_

Deputy Clerk

RENDITION DATE 1/17/19

EXHIBIT D



ORDER OF THE
ST. JOHNS COUNTY, FLORIDA
BOARD OF COUNTY COMMISSIONERS

FILED NOV 07 2024
St. Johns County
Clerk of Court

By: _____
Deputy Clerk

**RE:**     Lindsay Haga, AICP
England-Thims and Miller
14775 Old St. Augustine Road
Jacksonville, FL 32258

**FILE NUMBER:**     PUD 2024-09 Robinson Improvement Company PUD

**LEGAL:**     Exhibit A

**PARCEL ID:**     029830-0000,030020-0000,030040-0000,030050-0000, 030060-
0000,030430-0010, 03440-0000, 030450-0010

**DATE OF HEARING:**     November 5, 2024

ORDER **DENYING** PUD 2024-09 Robinson Improvement Company PUD

The request for a rezoning of approximately 2,673 acres of land from Open Rural (OR) to Planned Unit Development (PUD) to allow for a maximum of 3,332 residential dwelling units, generally located south of County Road 208, north of County Road 214, west of Interstate 95, and east of County Road 13A, as specifically described in **Exhibit A**, came before the St. Johns County Board of County Commissioners for a public hearing on November 5, 2024.

FINDINGS OF FACT

Having considered the application, along with supporting documents; the staff report; statements by the applicant; and all evidence presented during the public hearing, the Board finds as follows:

1. The request for Rezoning has been fully considered after public hearing with legal notice duly published as required by law.

2. The PUD is not consistent with the goals, policies and objectives of the 2025 St. Johns County Comprehensive Plan, specifically Goal A.1 of the Land Use Element related to effectively managed growth, the provision of diverse living opportunities, and the creation of a sound economic base.

3. The PUD is not consistent with the Future Land Use Designation of Residential-B

RECEIVED

CLERK OF COURTS

DATE NOV 07 2024

**Growth Management**
4040 Lewis Speedway, St. Augustine, FL 32084
904.209.0579 | sjcfl.us

4. The PUD is not consistent with Part 5.03.00 of the St. Johns County Land Development Code, including Sections 5.03.06. A through H which provides standards for review and approval of Planned Unit Developments.

5. The PUD is not consistent with the St. Johns County Comprehensive Plan, specifically Policy A.1.3.11 as it relates to compatibility of the project to the surrounding area.

6. The PUD does not meet the standards and criteria of Part 5.03.02 of the Land Development Code with respect to (B) location, (C) minimum size, (D) compatibility, and (E) adequacy of facilities, including, but not limited to inadequate drainage systems. Requested waivers are not approved.

7. The PUD does not meet all requirements of applicable general zoning, subdivision, and other regulations except as may be approved pursuant to Sections 5.03.02.G.1, 5.03.02.G.2, and 5.03.02.F of the Land Development Code. Requested waivers are not approved.

8. The PUD would adversely affect the orderly development of St. Johns County.

9. The PUD as proposed is not consistent with Objective A.1.11 of the St. Johns County Comprehensive Plan as it relates to an efficient compact land use pattern.

10. Consistent with *Board of County Commissioners of Brevard County v. Snyder, 627 So. 2d 469*, the Board finds a legitimate public purpose in keeping the existing zoning of Open Rural (OR).

**NOW THEREFORE**, based on the said Findings of Fact, the St. Johns County Board of County Commissioners hereby **DENIES** the rezoning from Open Rural (OR) to Planned Unit Development (PUD), on property described in **Exhibit A**.

This decision may be appealed by filing a writ of certiorari with the Clerk of the Circuit Court of St. Johns County in accordance with Florida Law.

BOARD OF COUNTY COMMISSIONERS
OF ST. JOHNS COUNTY, FLORIDA

BY: _____
　　Sarah Arnold, Chair

Rendition Date_____**NOV 0 7 2024**_____

ATTEST: Brandon J. Patty, Clerk of the Circuit Court and Comptroller

BY: _____
　　Deputy Clerk

**Growth Management**
4040 Lewis Speedway, St. Augustine, FL 32084
904.209.0579 | sjcfl.us

## Exhibit A

## Robinson Improvement Company Legal Description

## PUD Rezoning

All of Section 13, Township 7 South, Range 28 East, except that part in Official Records Book 193 Page 283 of the Public Records of St. Johns County, Florida;

And

East ½ of Section 23, Township 7 South, Range 28 East;

And

All of Section 24, Township 7 South, Range 28 East;

And

All of Section 25, Township 7 South, Range 28 East, lying north of CR 214 as recorded in Deed Book 246 Page 185 of the Public Records of St. Johns County;

And

East ½ of Section 26 and South ½ of Southwest ¼ of Section 26, Township 7 South, Range 28 East;

And

All of Section 35, Township 7 South, Range 28 East, lying north of CR 214 as recorded in Deed Book 246 Page 185 of the Public Records of St. Johns County;

And

All of Section 36, Township 7 South, Range 28 East, lying north of CR 214 as recorded in Deed Book 246 Page 185 of the Public Records of St. Johns County

- Approved Future Land Use Map Amendments – St. Johns County Ordinance 2019-007.

# LOCALiQ
## FLORIDA

PO Box 631244 Cincinnati, OH 45263-1244

### AFFIDAVIT OF PUBLICATION

Kristen Reed
England Thims & Miller, Inc.
14775 Old Saint Augustine RD
Jacksonville FL 32258-2463

STATE OF WISCONSIN, COUNTY OF BROWN

Before the undersigned authority personally appeared, who
on oath says that he or she is the Legal Coordinator of the
St Augustine Record, published in St Johns County, Florida;
that the attached copy of advertisement, being a Public
Notices, was published on the publicly accessible website of
St Johns County, Florida, or in a newspaper by print in the
issues of, on:

09/26/2024

Affiant further says that the website or newspaper complies
with all legal requirements for publication in chapter 50,
Florida Statutes.
Subscribed and sworn to before me, by the legal clerk, who
is personally known to me, on 09/26/2024

Legal Clerk

Notary, State of WI, County of Brown

My commission expires

Publication Cost:    $328.40
Tax Amount:          $0.00
Payment Cost:        $328.40
Order No:            10596920          # of Copies:
Customer No:         761790            1
PO #:

## THIS IS NOT AN INVOICE!

*Please do not use this form for payment remittance.*

MARIAH VERHAGEN
Notary Public
State of Wisconsin

# NOTICE OF A PROPOSED REZONING

**NOTICE IS HEREBY GIVEN** that a public hearing will be held on 10/17/2024 at 1:30 pm before the Planning and Zoning Agency in the St. Johns County Auditorium located at 500 San Sebastian View, St. Augustine, Florida and on 11/5/2024 at 9:00 am before the Board of County Commissioners in the St. Johns County Auditorium located at 500 San Sebastian View, St. Augustine, Florida to consider a Request to rezone approximately 2,673 acres of land from Open Rural (OR) to Planned Unit Development to allow for a maximum 3,332 residential dwelling units and 250,000 square feet of Retail/Commercial uses.

AN ORDINANCE OF THE COUNTY OF ST. JOHNS, STATE OF FLORIDA, REZONING LANDS AS DESCRIBED HERE IN AFTER FROM THE PRESENT ZONING CLASSIFICATION OF OPEN RURAL (OR) TO PLANNED UNIT DEVELOPMENT (PUD) FOR APPROXIMATELY 2,673 ACRES OF LAND LOCATED ON NORTH OF COUNTY ROAD 214, SOUTH OF COUNTY ROAD 208, WEST OF INTERSTATE 95 AND EAST OF COUNTY ROAD 13A; PROVIDING FOR FINDINGS OF FACT; REQUIRING RECORDATION; AND PROVIDING AN EFFECTIVE DATE.

The subject property is located at North of CR 214, south of CR 208, west of I-95 and east of CR13A See attached map (Exhibit A). This file and the proposed ordinance are maintained in the Planning and Zoning Division of the Growth Management Department located at the St. Johns County Permit Center, 4040 Lewis Speedway, St. Augustine, Florida 32084 and may be inspected by interested parties prior to said public hearing. Items not heard by 6 pm shall automatically be continued until 9 am the following day, unless otherwise directed by the Board.

Interested parties may appear at the meeting and be heard with respect to the proposed ordinance.

If a person decides to appeal any decision made with respect to any matter considered at such meeting or hearing, he or she will need a record of the proceedings, and for such purpose, he or she may need to ensure that a verbatim record of the proceedings is made, which record includes the testimony and evidence upon which the appeal is to be based.

This matter is subject to court imposed quasi-judicial rules of procedure. Interested parties should limit contact with the Board of County Commissioners or the Planning and Zoning Agency members on this topic, except in compliance with Resolution 95-126, to properly noticed public hearings or to written communication, care of SJC Planning and Zoning Division, 4040 Lewis Speedway, St. Augustine, Florida, 32084.

**NOTICE TO PERSONS NEEDING SPECIAL ACCOMMODATIONS AND TO ALL HEARING IMPAIRED PERSONS:** In accordance with the Americans with Disabilities Act, persons needing special accommodations or an interpreter to participate in this proceeding should contact the County's ADA Coordinator at (904) 209-0650 or at the St. Johns County Facilities Management, 2416 Dobbs Road, St. Augustine, FL 32086. Hearing impaired persons, call Florida Relay Service (1-800-955-8770), no later than 5 days prior to the meeting.

PLANNING AND ZONING AGENCY       BOARD OF COUNTY COMMISSIONERS
ST. JOHNS COUNTY, FLORIDA        ST. JOHNS COUNTY, FLORIDA
MEAGAN PERKINS, CHAIR            SARAH ARNOLD, CHAIR
FILE NUMBER: PUD-2024000003
PROJECT NAME: Robinson Improvement Company PUD



Order #10596920 (9/26/2024)

EXHIBIT E

### Florida Land Use and Environmental Dispute Resolution Act
### Section70.51 Florida Statutes

| | |
|---|---|
| **Parties:** | Property Owner: Robinson Improvement Company, LLC ('Robinson") |
| | Government Entity: Saint Johns County ("County") |
| **Enforcement Action:** | Saint Johns County's Rezoning Denial of PUD 2024-09 |
| **The Property:** | 2673 Acres West of I-95 between CR208 and CR214 |

---

### Special Magistrate Report and Recommendation

This Florida Land Use and Environmental Dispute Resolution Act (FLUEDRA) or ("Act") (Florida Statute 70.51) proceeding involves a decision by the Board of County Commissioners of Saint Johns County, Florida to deny PUD 2024-09 submitted by Robinson Improvement Company, LLC to rezone approximately 2673 acres of their property located West of I 95 between CR 208 and CR 214 from Open Rural (OR) to Planned Unit Development (PUD). This matter came before me, the Special Magistrate duly selected by the parties, for hearing on July 25, 2025, to consider the Request for Relief brought by Robinson. At the hearing, testimony was offered by witnesses called by both Robinson and the County and was given by members of the public. Additionally, documentary and video exhibits were received and presented from the parties and exhibits and written comments were also provided by members of the public. The Special Magistrate has considered the testimony and documentary evidence presented and has heard and considered arguments of counsel for both Robinson and the County. The written submissions of counsel requested by the Special Magistrate have also been reviewed and considered. Based on the record provided, I hereby make the following findings and recommendation:

### 1. Procedural History

In 2024, Robinson submitted an application to the County (PUD 2024-09) to rezone approximately 2673 acres from Open Rural (OR) to Planned Unit Development (PUD) to allow for a maximum density of 3, residential dwelling units for property located on the north side of County Road 214, south of County Road 208 and between Interstate 95 and County Road 13 A N.

Initially, on October 17, 2024, pursuant to the County's Land Development Code, the Robinson's application for the Planned Unit development (PUD) was first brought to a public hearing before the St. Johns County Planning and Zoning Authority (PZA) which recommended denial of the rezoning application.

On November 5, 2024, pursuant to the County's Land Development Code, the St. Johns County Board of County Commissioners held a public hearing on Robinson's PUD 2024-09 rezoning application at which time they denied the Robinson's request.

The Order signed by the Chair of the Board of County Commissioners Denying PUD 2024-09 was rendered on November 7, 2025.

On November 18, 2024, Robinson timely filed a Request for Relief from the County's denial pursuant to The Florida Land Use and Environmental Dispute Resolution Act (FLUEDRA) and the County filed its response.

Pursuant to the requirements of FLUEDRA, the parties convened for a Mediation Conference with the Special Magistrate on March 28, 2025, but were unable to reach a resolution during mediation.

On Friday, July 25, 2025, the process culminated in a public hearing (the "Contested Hearing") held at the St. Johns County Auditorium during which witnesses called by the parties presented testimony and counsel for the parties submitted documentary evidence in support of their positions and members of the public also offered testimony and exhibits.

**2.  Undisputed Statement of Facts**

The Property included in the PUD application has been owned by Robinson for over a century and for at least the last sixty years has been under continuous timber management.

Before 2019, under the County's Future Land Use Map (FLUM) the Property was designated Rural Silviculture (R/S). The surrounding lands are mainly designated R/S with a portion of the lands to the southwest designated Agriculture (A1) and to the north are Residential-B (Res-B).

The Property is zoned Open Rural (OR) with surrounding properties also zoned (OR) and with residential developments to the north and east under Planned Rural Development (PRD) or Planned Unit Development (PUD).

In 2017, the County paid $1,225,000.00 for 12.7 acres (over $96,400. per acre) for the right of way north of the Property to CR 208. This property was acquired as part of the County's agreement to build County Road 2209 as a condition for its receipt of a rule variance from the Florida Department of Transportation (FDOT) to alleviate local traffic on Interstate-95. Since that year, the County has actively funded and constructed portions of the CR 2209 roadway.

In January 2019, the Property, which was formerly designated Rural/Silviculture (R/S), was now designated Residential-B in the St. Johns County Comprehensive Plan (the Plan) through a county staff-initiated amendment which provided specifically that the maximum

2

development on the Property would be 3,332 residential units with any development delayed until 2026. The Residential-B designation allows for up to two residential units per net acre.

Also in January 2019, after years of discussions and concurrent with the Plan Amendment, the Robinson Improvement Company and the County entered into an "Agreement for Donation of Right-of-Way and Stormwater Site" which provided for the donation of over seven (7) miles of right-of-way and related stormwater facilities for the construction of a portion of County Road 2209.

As stated in the 2019 Staff report, in part:

> The County is requesting a Comprehensive Plan Amendment to change the Future Land Use Map to Residential-B, which allows up two residential dwelling units per net acre. Based on the 1,666 acres of developable acres within the project boundary, the maximum theoretical yield under the Residential-B FLUM designation is 3,332 residential dwelling units.
>
> This proposed amendment expands the Development Area Boundary to the south and allows for the protection of the CR 2209 corridor by the donation of Right-of-Way. The Right-of-Way provides a connection south of County Road 208 to just north of County Road 305. The entirety of County Road 2209 would extend from Race Track Road to County Road 305, allowing a north/south alternative to I-95. This alternate route has long been identified as a need by the County. The County's Long-Range Transportation and Capital Improvement Plan includes portions of the corridor that would allow for completion of the Right-of-Way. The County has and will continue to work with various property owners to acquire Right-of-Way. This corridor will serve and benefit the existing and future growth of St. Johns County and residents of surrounding areas. As the corridor is developed, this centralized area of the County will likely demonstrate the potential for economic development and job opportunities. Nearby residents will also benefit from trails and sidewalks that may be provided within the Right-of-Way for bicycle and pedestrian use.
>
> As previously stated, there is no development plan or rezoning with this proposed amendment. In the future 2026, it is anticipated a PUD zoning change will be submitted and reviewed according to the land development regulations and permitting requirements in place at that time.

3

Accordingly, at that time, County staff recommended adoption of the proposed amendment. Their findings were "based upon the following information: the public benefit for the completion of CR 2209, application materials, consistency with applicable policies of the Comprehensive Plan, the Land development Code requirements and other relevant information available to staff." A clear reading of this Staff Report reflects the anticipated economic and residential development expected along this CR2209 corridor.

St. Johns County's Land Development Code requires A Planned Unit Development (PUD) application for developments over ten acres. Accordingly in 2024, Robinson submitted its PUD rezoning application requesting 3332 residential units consistent with the maximum allowed under the RES-B designation under the Plan. The PUD provided for the delayed construction that was also consistent with the plan.

Under Robison's PUD application, access to the planned development was to be through the constructed CR 2209 section from CR 208 to CR 214 which was to be built in two phases. Also, Robinson agreed it was responsible for the required transportation proportionate share for the proposed development at an estimated cost of approximately $49,030,159 as determined by the County. Both CR 208 and CR 214 are currently two-lane roads. The Amendment to the Plan was done to facilitate the continued construction of CR 2209 to the south.

### 3. Role of The Special Magistrate

The intent of the FLUEDRA process is to provide an opportunity to reach an agreeable resolution of land use disputes between local governments and property owners and to avoid the time, expense and uncertainty associated with litigation. The act emphasizes that the Special Magistrates first responsibility is to "... facilitate a resolution of the conflict between the owner and the governmental entities to the end that some modification of the owner's proposed use of the property or adjustment in the development order or enforcement action or regulatory efforts by one or more of the governmental parties may be reached." Sec 70.51(17)(a), Fla. Sta.

Therefore, as Special Magistrate my initial primary focus was an attempt to seek a compromise between Robinson and the County that would generally meet the respective goals and expectations through a mediation proceeding. Since no agreeable mediated resolution was realized, the Act provides that the parties proceed to a Contested Hearing.

### 4. The Contested Hearing

At the Contested Hearing, both Robinson and the County were represented by exceptionally competent counsel who ardently argued their respective positions. While heavy emphasis was placed on the facts and various provisions of both the County's Comprehensive Plan and Land Development Code. The scope of this proceeding limits my role to solely determine whether the County's denial of the Robinson PUD application

4

***unreasonably or unfairly burdens*** the use of Robinson's property. Sec. 70.51(17)(b), Fla. Stat. This standard departs significantly from that which is customary for disputes revolving around property rights or quasi-judicial decisions.

Trav Carter testified, as Robinson's representative, regarding the family's historical ownership and use of the Property as timber producing. He testified regarding the discussions with the County involving a Comprehensive Plan Amendment and the Agreement for Donation of Right-Of-Way and Stormwater Sights. He further testified that because of his family's reliance on the County's representations, they have not negotiated a new timber lease nor developed a plan for its use as wetlands mitigation banks. He also testified how the Right of Way donation negatively impacted the sale price of the family land to the south of the Property. He testified that the County is retreating from its expressed representations and not acting in good faith.

Douglas Miller, a professional engineer experienced in infrastructure and project development, testified regarding his understanding of the County's concurrency problem with FDOT along a section of Interstate I-95 and the need for development of an alternate north-south route in order for FDOT to grant a variance. He described his meetings with county staff and the various benefits the County would receive from the Right of Way donation by Robinson. These include the absence of mitigation banks, non-removal of conservation easements, no cost to the County, and a shorter route. The negotiations ended with the County introducing the legislation that led to the amendment to the Comprehensive Land Use Plan and the Future Land Use Map which included specific conditions and the Right of Way Donation Agreement. Mr. Miller also testified that a right of way through the Property would fragment the property and prevent its use for wetland mitigation and timber operations.

Jeffrey Crammond, a professional engineer who specializes in Traffic Engineering and Transportation Planning, testified that the County's Comprehensive plan considers the impact on roads generated by the number of units and timing. He testified that Robison was prepared to meet their obligations for their proportionate share cost in the amount of $56.7 million using the County's methodology. He testified that this is in addition to the estimated $61.5 million Robinson would spend to build CR 2209 from CR208 to CR214. He also testified that where an applicant provides mitigation, a rezoning cannot be denied because of existing road deficiencies. In summation, Mr. Crammond testified that the PUD, as presented with the Agreement, met all the required criteria to mitigate traffic impacts. However, he did not dispute that traffic deficiencies would continue to exist.

Lindsay Haga, a Professional Land Planner, testified that the PUD, as presented, met all the applicable requirements in the County's Land Development Code. As to the requested waivers, she testified that they were common and necessary for this size community and were routinely granted by the County for other large, planned communities. Additionally, she offered testimony that when a county's plan has a stated number of units attached to a property, that number is factored into its future plans for traffic and

5

infrastructure needs. She further testified that the County Commission had just recently voted on the 2050 Plan version with the Property still designated for the 3332 units with no discussion or concerns raised regarding area compatibility. Finally, Ms. Haga testified regarding the phased development of the Property and road completion with no unit development before 2028 and only 5500 homes could be developed before 2031.

Sean Mullen testified regarding his appraisal which was received in evidence. He testified that his valuation of the Property with open rural zoning was $26.75 million and with PUD approval $73.3 million and that the Plan amendment without a PUD provides no value to Robinson. He also, consistent with other testimony, testified that the Right of Way Donation negatively impacts the Property's value and prohibits its use for wetland mitigation banks.

Jacob Smith, St. Johns County Planning Division Manager, testified that any rezoning application includes a compatibility review. He testified about the subject Property is rural in character and is bordered by low density residential on the southeast and northeast. He also pointed out that the Staff's Report Aerial Map, the FLUM and Zoning Map, all depict surrounding properties as mainly agricultural and silvicultural. Mr. Smith also pointed to the Plan's limit on density and the County's right to consider other "site-specific" factors with a rezoning application, including "design, compatibility, infrastructure, site characteristics, and other similar considerations."

Dick D'Souza, St. Johns County's Assistant Director for Transportation, testified that the PUD as developed would affect traffic patterns on the roads serving and near the property. He testified that the County has not designed or funded any construction of CR 2209 south of SR16 to meet the Robinson Property. He also testified as to the initial impact of the PUD on CR 208 which would continue its deficient threshold. However, Mr. D'Souza did admit that Robinson would meet its proportionate share under the County's LDC and state law.

The Magistrate heard testimony from numerous residents of the County. Many were from the St. Johns County residential community of Shearwater. Their testimony, criticizing the developer, together with documentary exhibits presented a picture of a development that was not constructed or completed as advertised. They testified and emphasized their concerns that this same developer, Freehold Communities, might now be involved with the Robinson PUD project. Some other residents testified about the rural nature of the area and their concern that a development of this size would negatively impact surrounding properties. They were also concerned about the increase in traffic on CR 208 and CR 214, which are two lane roads. In general, they testified that this was just two much development for this area of the County.

6

5. **Special Magistrate's Findings**

In considering whether the County's Order denying Robinson's PUD application was **'unreasonable or unfairly burdens use'** of the Property, consideration has been given to the Property's historical use. Also, taken into account were the reasonable expectations of the owner at the time, the FLUM amendment and the Right of Way agreement were negotiated with the County. Consideration has also been given to the current state of development with the lands bordering the Property.

The special Magistrate also considered the purpose of a comprehensive land plan and its relationship to zoning. A comprehensive plan sets forth long term expectations for growth which should guide future zoning and development action but is not meant to make immediate land use changes. In other words, it does not change existing zoning. In this case, the County enacted a comprehensive plan amendment which clearly anticipated a specifically designated increased density for the Property. Additionally, testimony at the hearing pointed out that the County in its 2050 Comprehensive Land Plan submitted to the State of Florida confirmed the Res-B designation for the Property and even included the 3332 residential units in its housing calculations even though it had denied zoning for that number of units.

When considering the circumstances surrounding the County's initiative to amend both the text and FLUM for this Property in their Comprehensive Plan, together with the planned donation and construction of the CR2209 right of way by Robinson, the parties negotiating clearly envisioned development beyond the 1 unit per acre that the Property was then, and  is currently zoned. Even though the Plan amendment references further government approval for development, the fact remains that the expectation was for approval of development consistent with envisioned infrastructure being provided to the County at Robinson's cost. It is also clear that Robinson has spent substantial funds planning for the development of this Property based on those discussions.

Although the County has not yet requested a right-of-way donation under the CR 2209 Agreement, given the County's other land acquisitions and roadway developments, it is reasonable to conclude that the County intends to fulfill its obligations to the FDOT and complete the CR 2209 corridor. Accordingly, with CR 2209 sections currently being completed and with some right-of-way land already acquired, the only efficient route for that roadway is through the Robinson Property to continue south.

After reviewing Petitioner's FLUEDRA Request for Relief, the County's FLUEDRA response, the testimony and exhibit evidence, and legal arguments presented at the Contested Hearing and witness summaries submitted, the Special Magistrate finds that the County's denial of Robinson's PUD application was unreasonable and unfairly burdens Robinson's use of the Property. Specifically, I find that Robinson had a *reasonable* expectation that the County would approve a PUD with a density greater than that allowed

under open rural zoning and that the County's denial together with the Right of Way Donation Agreement constituted an *unfair burden*.

### 6. <u>Recommendation</u>

Section 70.51(19) of FLUEDRA states, in pertinent part:

> *(b) If the special magistrate finds that the development order or enforcement action, or the development order or enforcement action in combination with the actions or regulations of other governmental entities, is unreasonable or unfairly burdens use of the owner's property, the special magistrate, with the owner's consent to proceed, may recommend one or more alternatives that protect the public interest served by the development order or enforcement action and regulations at issue but allow for reduced restraints on the use of the owner's real property, including, but not limited to:*

1. *An adjustment of land development or permit standards or other provisions controlling the development or use of land.*
2. *Increases or modifications in the density, intensity, or use of areas of development.*
3. *The transfer of development rights.*
4. *Land swaps or exchanges.*
5. *Mitigation, including payments in lieu of onsite mitigation.*
6. *Location on the least sensitive portion of the property.*
7. *Conditioning the amount of development or use permitted.*
8. *A requirement that issues be addressed on a more comprehensive basis than a single proposed use or development.*
9. *Issuance of the development order, a variance, special exception, or other extraordinary relief, including withdrawal of the enforcement action.*
10. *Purchase of the real property, or an interest therein, by an appropriate governmental entity.*

Notwithstanding my findings above, there is merit to the County's concern with traffic impact on CR 208 and CR 214 and the compatibility of a PUD of this size with the surrounding area. When I first moved from Jacksonville to Saint Johns County in 1976, it was a rural county and, I believe, there were less than 50,000 residents. Now, the county is far less rural and has an estimated population of over 346,000 residents. As the County's 2050 Comprehensive Plan projects, the residential needs of the County will continue to grow and will need to be met with planned development.

Therefore, in accordance with the Act, I am also making the following recommendations to the parties with the hope that future litigation will be avoided with a resolution that achieves mutual benefit:

1. Have the PUD provide that at least two lanes of CR 2209 be developed through the property before any residential units are available. This will allow vehicular access to both CR 208 and CR 214 and lessen the initial burden on a single roadway.

8

2.  Have the PUD reduce the number of units available by 2031 to 350 units and set a similar unit restriction for each year from 2032 through 2035. This will allow for a more staggered density increase consistent with the anticipated increased housing needs articulated in the Comprehensive Plan

3.  To shield the impact on the neighboring residential properties, have the PUD provide the lots bordering those properties should be only for single family homes and should be on lots at least three quarters of an acre in size. This would also lower the proposed density.

4.  Have the PUD provide designated space for a future fire station in coordination with the County and also provide space for a future school in coordination with the School District. (If it fits in with the long-range plan of either the Department or the District).

5.  Additionally, Have the PUD designate, and the County approve some land within the Property for commercial use to serve the community's residents and would lower vehicle traffic trips outside the PUD. Additionally, setting aside land for this use should also result in lower density.

6.  Taking the actions in numbers 3, 4, and 5 above should be done with the intent to lower the overall density on the Property.

These recommendations were meant to provide a more staggered development consistent with the County's future housing needs as expressed in its current and 2050 Comprehensive plans. They were also meant to lessen the immediate traffic impact on CR 214 and CR 208 and provide time to address future roadway development and to lower the overall density of the PUD.

The foregoing Report and Recommendation of the Special Magistrate has been submitted to the parties on this 19th day of August 2025.

*J. Michael Traynor*

_____

J. Michael Traynor, Special Magistrate

cc:

Ryan Ross, Esq. (*rross@sjcfl.us*)
Zach Miller, Esq. (*zwmillerlaw@gmail.com*)

9

EXHIBIT F

| Project Name | Ordinance No. | Description |
|---|---|---|
| | | Commercial, and Office and Professional Services as defined by the St. Johns County Land Development Code. |
| Robinson | 2019-7 | Development within the 1,666 acres of the Robinson Property, as defined in Ordinance 2019-7, shall be limited to a maximum of 3,332 dwelling units. No development will occur on the subject property prior to 2026. Proposed changes to increase the residential density or add non-residential uses are subject to the provisions of chapter 163, Florida Statutes, as related to Comprehensive Plan Amendments. |
| Pellicer Creek Outpost | 2019-11 | The property known as Pellicer Creek Outpost, application CPA(SS) 2018-05 containing approximately 9.61 acres, as legally described in Ordinance 2019-11, is designated Residential A on the Future Land Use Map, but is limited to a maximum of 4 dwelling units and maintaining Open Rural zoning, with the Uses as described within the St. Johns County Land Development Code. |
| Greenbriar Downs | 2019-14 | The North Parcel within the Property known as Greenbriar Downs (approximately 55 acres) described in Ordinance No. 2019-14 is assigned the Residential B future land use designation. The development intensity of the North Parcel shall not exceed 160,000 square feet of those non-residential uses and other uses set forth in the Greenbriar Downs PUD. Proposed changes to increase the allowed intensity of the North Parcel within Greenbriar Downs are subject to the provisions of Chapter 163, Florida Statutes. The South Parcel within the Property known as Greenbriar Downs (approximately 728 acres) described in Ordinance No. 2019-14 shall be allowed to be developed with a maximum of 818 Age-Restricted Residential attached and detached dwelling units and related uses as set forth in the Greenbriar Downs PUD. Proposed changes to increase the allowed density of the South Parcel within Greenbriar Downs are subject to the provisions of Chapter 163, Florida Statutes. |
| Bartram Park Planned Unit Development | 2019-35 | The property known as Bartram Park Planned Unit Development ("PUD"), containing approximately 582 acres as legally described in Ordinance No. 2019-35 is assigned a Residential B Future Land Use Map designation and is limited to a maximum of 646 dwelling units. Proposed changes to increase the allowed density of the Bartram Park PUD property are subject to the |

EXHIBIT G

| Property Name | Existing Land Use | Adopted Land Use | Existing Zoning | Adopted Zoning | Zoning Ordinance | FGUR/COMPREHENSIVE Ordinance | FLU Application | Rezoning Application | FLUM Ordinance Link | Most Current Rezoning Ordinance Link | Site Specific FLUM Notation | Site Specific Condition Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|